1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9    Carlos Adrian Morley,              )    No. CV-09-1554-PHX-NVW (LOA)
                                        )
10              Petitioner,             )    **REPORT AND RECOMMENDATION**
                                        )
11   vs.                                )
                                        )
12   Yolanda Elliot, et al.             )
                                        )
13              Respondents.            )
                                        )
14   _____   )

15          This matter is before the Court on review of Petitioner's Petition for Writ of Habeas

16   Corpus pursuant to 28 U.S.C. § 2254.  (Docs. 1, 4)  Respondents have filed an Answer, doc.

17   21, to which Petitioner has replied[1], doc. 36.  Accordingly, this matter is ripe for review.  For

18   the reasons set forth below, and in the January 14, 2011 Report and Recommendation, doc.

19   76, the Petition should be denied.

20   **I. Factual and Procedural Background**

21

22   _____

23          [1]  Petitioner filed a reply on March 24, 2010, doc. 32, and simultaneously requested
     additional time to obtain counsel to prepare a "well written" reply.  (Doc. 31)   The Court
24   granted Petitioner's motion giving him until April 31, 2010 to file a new reply.  The Court
     advised Petitioner, that if he filed a new reply, it would supplant the reply filed on March 24,
25   2010.  (Doc. 33)  Although Petitioner did not obtain counsel, on April 30, 2010, he filed a new
     Reply.  (Doc. 36)  In accordance with prior orders, the relevant briefing before the Court
26   consists of: (1) Petitioner's Petition for Writ of Habeas Corpus and Memorandum in Support
     of Petition for Writ of Habeas Corpus, docs. 1, 4; (2) Respondents' Answer to Petition for Writ
27   of Habeas Corpus, doc. 21; and (3) Petitioner's Traverse/Reply to Answer to Petition for Writ
     of Habeas Corpus, doc. 36.
28

**A. Charges, Plea, and Sentencing**

On August 15, 2002, the State of Arizona filed an indictment in Maricopa County Superior Court, CR2002-014160 (the "2002 case"), charging Petitioner with two counts of fraudulent schemes and artifices, class 2 felonies (Counts 1 and 4); three counts of theft, class two felonies (Counts 2, 3, and 5); and two counts of trafficking in stolen property, class 3 felonies (Counts 6-7). (Respondents' Exh. C)

On May 12, 2003, Petitioner pled guilty, pursuant to a written plea agreement, to Counts 1 and 6 in CR2002-014160. (Respondents' Exh. E) The plea agreement stated that Count 1 carried a presumptive sentence of 5 years, a minimum sentence of 4 years (3 years if trial court makes an exceptional circumstances finding), and a maximum sentence of 10 years (12.5 years if the court makes an exceptional circumstances finding). (Respondents' Exh. E) The plea agreement also provided that Count 6 carried a presumptive sentence of 3.5 years, a minimum sentence of 2.5 years (2 years if the trial court makes an exceptional circumstances finding), and a maximum sentence of 7 years (8.75 years if the court makes an exceptional circumstances finding). (Respondents' Exh. E)

Before Petitioner was sentenced in CR2002-014160, on September 9, 2003, the State of Arizona filed an indictment in Maricopa Superior Court CR2003-021342 (the "2003 case") charging Petitioner with one count of conspiracy to commit first degree murder, a class 1 felony. (Respondents' Exh. F) On September 18, 2003, Petitioner was appointed counsel to represent him in CR2003-021342. (Respondents' Exh. G) On October 5, 2003, the State filed an allegation that Petitioner committed the offense charged in CR2003-021342 while released on bond in CR2002-014160. (Respondents' Exh. H)

On October 20, 2003, the State moved to withdraw from the May 12, 2003 plea agreement in CR2002-014160. (Respondents' Exh. I) The State relied on paragraph 5 of the plea agreement which provided that "this agreement shall not be binding on the State should the defendant be charged with or commit a crime between the time of this agreement and the time for sentencing in this cause . . . ." (Respondents' Exh. I; Exh. E) The State explained that, on September 9, 2003, Petitioner was charged with conspiracy to commit

1   first degree murder in CR2003-021342, based on events that allegedly occurred on or

2   between July 10 and July 28, 2003.  (Respondents' Exh. I)   The indictment in CR2003-

3   021342 alleged that Petitioner contracted with Detective Cameron Scadden, who was acting

4   undercover, to murder one of the victims in CR2002-014160.  (Respondents' Exh. I)

5        On October 22, 2003, the court granted the State's motion to withdraw from the May

6   12, 2003 plea agreement.  (Respondents' Exh. J)   Pursuant to the terms of that agreement,

7   the charges in CR2002–014160 were automatically reinstated.  (Respondents' Exhs. E, J)

8        On October 30, 2003, Petitioner's counsel in CR2003-021342, Shelley Davis, moved

9   for pre-screening of Petitioner pursuant to Ariz.R.Crim.P. 11 because, according to

10  Petitioner's cellmate, Petitioner was "exhibiting bizarre behavior including talking to people

11  who are not there, whimpering and hardly sleeping or eating."  (Respondents' Exh. K)

12  Defense counsel Davis also noted that Petitioner was taking Respiridal and Trazedone for

13  "some type of mental disease or disorder."  (Respondents' Exh. K)   Defense counsel in

14  CR2002-014160, Bruce Blumberg, joined in the Rule 11 motion.  (Respondents' Exh. L)

15  Competency evaluations were completed by Dr. Joseph Franzetti and Dr. Stephen Gray.

16  (Respondents' Exh. M)  After considering the doctors' reports, the court found that

17  Petitioner understood the proceedings and was able to assist counsel with his defense.  The

18  court found Petitioner competent pursuant to A.R.S. § 13-4510(B).  (Respondents' Exh. M)

19       On July 2, 2004, Petitioner pled guilty in CR2002-014160 to Count 1, fraudulent

20  schemes and artifices, a class 2 felony; and Count 6, trafficking in stolen property, a class 3

21  felony, as charged  (Respondents' Exhs. N, P)  The plea agreement was signed by Petitioner

22  and defense counsel, Bruce Blumberg.  The plea specified that Count 1 carries a

23  presumptive sentence of 5 years, a minimum sentence of 4 years, and a maximum sentence

24  of 10 years.  Count 6 carries a presumptive sentence of 3.5 years, a minimum sentence of 2

25  years, and a maximum sentence of 7 years.  (Respondents' Exh. N)   The plea agreement

26  stipulated that "Defendant shall be sentenced be placed (sic) on supervised probation to run

27  consecutively to Defendant's sentence in CR2003-021342."  (Respondents' Exh. N, ¶ 2)

28  Pursuant to the plea agreement, Counts 2-5, and 7 were dismissed.  (Respondents' Exh. N)

During the same proceeding, Petitioner also pled guilty in CR2003-021432 to amended Count 1, solicitation to commit first degree murder, a class 3 felony, with one historical prior felony conviction.  (Respondents' Exhs. O, P)   The plea agreement in CR2003-021432 provided that:

> 1.  The crime carries a presumptive sentence of 6.5 years; a minimum sentence of 4.5 years, (3.5 years if trial court makes exceptional circumstances finding); and a maximum sentence of 13 years, (16.25 years if trial court makes exceptional circumstances finding).  Probation is not available.  Restitution of economic loss to the victim . . . .

> 2.  The parties stipulate to the following additional terms, subject to court approval at the time of sentencing as set forth in paragraph 7.

> Defendant shall be sentenced to the Department of Correction for a term to be decided by the court, not less than 6.5 years and not to exceed 13 years. Defendant shall pay restitution not to exceed $5,000.

> 3.  The following charges are dismissed or, if not yet filed, shall not be brought against the Defendant:

> Allegation that this offense was committed while on felony release.

> * * *

> 5. [N]or shall this agreement be binding on the State until the State confirms all representations made by the Defendant and his attorney, to-wit:

> Defendant was convicted in Maricopa County Superior Court CR2002-014160 on 7-2-04 for Fraudulent Schemes and Artifices a class 2 felony committed between March 1999 and July 2000; Defendant was represented by counsel in that matter.

> * * *

> 6.  Unless this plea is rejected by the court or withdrawn by either party, the Defendant hereby waives and gives up any and all motions, defenses, objections, or requests which he has made or raised, or could assert hereafter, to the court's entry of judgment against him and imposition of a sentence upon him consistent with this agreement . . . .

> 7.  The parties hereto fully and completely understand and agree that by entering into a plea agreement, the defendant consents to *judicial factfinding by preponderance of the evidence as to any aspect or enhancement of sentence*, and that any sentence either stipulated to or recommended herein in paragraph two is not binding on the court.  In making the sentencing determination, the court is not bound by the rules of evidence.

> * * *

> 9. I have read and understand the provisions of pages one and two of this agreement.  I have discussed the case and my constitutional rights with my

> lawyer.  I understand that by pleading GUILTY I will be waiving and giving up my right to a determination of probable cause, to a trial by jury to determine guilt and to determine any fact used to impose a sentence within the range stated above in paragraph one . . . .

(Respondents' Exh. O, underlining and capitalization in original)

During the July 2, 2004 change of plea hearing[2], Shelly Davis appeared for Petitioner in both cases.  (Respondents' Exh. P at 3)  The record does not contain any information concerning why Bruce Blumberg, who was representing Petitioner in CR2002-014160, did not attend the change of plea hearing.  (Respondents' Exh. P at 3)

Davis confirmed that she had discussed both plea agreements with Petitioner. (Respondents' Exh. P at 3)  During the July 2, 2004 change of plea hearing, Petitioner acknowledged that he had taken his prescribed doses, at the prescribed times, of Zyprexa, Klonopin, and Wellbutrine that day.  (Respondents' Exh. P at 3-4)  Petitioner advised the court that he had been taking those medications since September of 2003.  Petitioner confirmed that he had not taken any other medications that day.  (Respondents' Exh. P at 3) Petitioner advised the court that taking Zyprexa, Klonopin, and Wellbutrine had not affected his ability to understand the proceeding.  (Respondents' Exh. P at 3)  The court then advised Petitioner that it had two plea agreements to review and that Petitioner should inform the court "[i]f at any time [he gets] confused."  (Respondents' Exh. P at 3-4)

The court first discussed the charges and plea agreement in CR2002-014160. (Respondents' Exh. P at 5)  The court verified that Petitioner intended to plead guilty to Count 1, fraudulent schemes and artifices - a class 2 felony, and to Count 6, trafficking in stolen property - a class 3 felony.  (Respondents' Exh. P at 5)  Petitioner acknowledged that he had initialed the provisions in the plea agreement, signed the agreement, and that his initials and signature indicated "that [he] read and that [he understood] the plea." (Respondents' Exh. P at 5-6)  Petitioner agreed that he was pleading to probation on both counts in CR2002-014160 to run consecutively to his sentence in the 2003 case.  (*Id*. at 7-8)

---

[2]  The Honorable Warren J. Granville presided.

1  Petitioner also acknowledged that he entered and signed the plea agreement voluntarily.

2  (Respondents' Exh. P at 7-8)

3  The court next discussed the charges and plea agreement in CR2003-021342. The

4  court verified that Petitioner was "going to plead guilty to amended Count 1, solicitation to

5  commit first degree murder, a class 3 felony with one prior felony . . . ." (Respondents' Exh.

6  P at 8) Petitioner acknowledged that he had initialed the provisions of the plea agreement,

7  signed the agreement, and that his initials and signature indicated "that [he] read and that [he

8  understood] the plea." (Respondents' Exh. P at 8-9) Petitioner acknowledged that defense

9  counsel Davis had "explain[ed] the plea" to him, and that he understood the plea agreement.

10  (Respondents' Exh. N at 9) The court also confirmed that the plea agreement provided that

11  Petitioner would be "sentenced to the Department of Corrections for the term up to the

12  Court, not less than 6 and a half years, which is the presumptive term, and not greater than

13  13 years, which is the maximum term or the aggravated term. You will have to pay

14  restitution up to $5,000." (Respondents' Exh. P at 9) Petitioner acknowledged that he

15  understood his sentencing exposure. (*Id.*)

16  In response to the court's questions, Petitioner acknowledged that there was nothing

17  in the plea agreement he did not agree with or did not understand, and that no force or

18  threats were used to induce him to plead guilty. (Respondents' Exh. P at 9-10) Petitioner

19  confirmed that he understood that the plea agreement stipulated to a prison term of 6.5 to 13

20  years. (Respondents' Exh. P at 10) The court then asked Petitioner, "[y]ou understand that

21  in order for the Court to give you a sentence greater than 6 and a half years, that means you

22  have the right to a jury determination of aggravating factors that you are waiving; do you

23  understand that." (Respondents' Exh. P at 10-11) Petitioner responded, "Yes."

24  (Respondents' Exh. P at 11)

25  After explaining the possible sentences, restitution, and fines, the court asked

26  Petitioner if he understood that if the court accepted the plea, Petitioner could not withdraw

27  from the plea agreement unless he demonstrated manifest injustice. (Respondents' Exh. P at

28  13) Petitioner responded that he understood. (*Id.*)

1    The court again asked Petitioner if he understood that "in the 2003 case, you are also

2    giving up the right for the jury to determine aggravating factors?" and if he wished to waive

3    those rights.  Petitioner responded, "Yes."  (Respondents' Exh. P at 14)  Petitioner then

4    entered a plea of guilty to Count 1, fraudulent schemes and artifices.  (Respondents' Exh. P

5    at 14)

6    Petitioner next provided the following factual basis for his plea to Count 1 in

7    CR2002-014160:

8    Ms. Davis: Did the fraudulent schemes - did this occur between March of 1999
     and July of 2000?

9

     The Defendant: Yes, it did.
10
     Ms. Davis: Did you obtain either money or property by means of some type
11   of scheme?

12   The Defendant: Yes.

13   Ms. Davis: What was it, money or was it property?

14   The Defendant: Money.

15   Ms. Davis: Okay.  And how did you obtain that money?
     The Defendant: By misrepresenting values to vehicles.
16
     Ms. Davis: So you told people that they were worth more than they were
17   worth?

18   The Defendant: Right.

19   Ms. Davis: And people gave you money in exchange for that?

20   The Defendant: Yes.

21   Ms. Davis: How much money did you think that the fraud schemes entailed?

22   The Defendant: Approximately, I think it was $195,000.

23   Ms. Davis: And, did this happen in Maricopa County?

24   The Defendant: Yes, it did.

25   (Respondents' Exh. P at 14-16)

26   Petitioner then pled guilty to Count 6 in CR2002-014160, trafficking in stolen

27   property, and provided the following factual basis for his plea:

28   Ms. Davis: Mr. Morley, did you, on June 19th of 2002, sell property that you

- 7 -

1    knew or should have known was stolen?

2    The Defendant: Yes.

3    Ms. Davis: What was the property?

4    The Defendant: '93 GMC truck.

5    Ms. Davis: A 1993 GMC truck?

6    The Defendant: Yes.

7    Ms. Davis: You knew the truck had been stolen?

8    The Defendant: Yes.

9    Ms. Davis: Did that happen in Maricopa County?

10   The Defendant: Yes.

11   (Respondents' Exh. P at 16-17)

12        Thereafter, Petitioner pled guilty in CR2003-21342 to solicitation to commit first

13   degree murder with a historical prior and provided the following factual basis:

14        Ms. Davis: Judge, this occurred on July 10th of 2003, in the City of Scottsdale,
         which is in Maricopa County.

15
16        Mr. Morley, on that date, solicited, requested an undercover officer, Detective
         Cameron Scadden, of the Phoenix Police Department, whom he believed to
17        be a hitman, to kill Robert Ferry, who was a witness against him in the
         fraudulent schemes case.

18        The Court: Mr. Morley, did this happen in the Maricopa County Jail?

19        The Defendant: Yes, it did.

20        The Court: Mr. Morley, did you hear Ms. Davis tell me what she thought
         the facts were?

21
22        The Defendant: Yes.

23        The Court: Did she get those facts right?

24        The Defendant: Yes.

     (Respondents' Exh. P at 17-18)

25
         During the change of plea hearing, Petitioner's counsel disputed the burden of proof -

26   described as a preponderance of the evidence - applicable to the court's determination of

27   aggravating factors in paragraph 7 of the plea agreement on CR2003-021342.

28

1   (Respondents' Exh. P at 19-20)   In response, the State noted that Petitioner accepted the

2   plea agreement as written and negotiated.  Agreeing with defense counsel's argument, the

3   court found that, in view of *Blakely*, "any sentencing decision aggravating [Petitioner's]

4   sentence . . . must be beyond a reasonable doubt, but [Petitioner] has waived that

5   determination being made by a jury, and it can be made by the sentencing court at the time

6   of sentencing."  (Respondents' Exh. P at 20)

7        The Court found that Petitioner's plea was "knowingly and intelligently and

8   voluntarily made" and accepted each of Petitioner's guilty pleas.  (Respondents' Exh. P at

9   21)

10        The sentencing hearing was held on September 17, 2004.  Defense counsel Shelley

11   Davis and Bruce Blumberg both appeared for Petitioner. (Respondents' Exh. Q at 3)   At the

12   outset, the court inquired regarding Petitioner's use of drugs, alcohol, or medication within

13   the proceeding 24 hours.  (Respondents' Exh. Q at 8-9)  Petitioner replied that he had taken

14   his prescribed doses of Zyprexa and Seroquel and that he had taken "all the medicine that"

15   he was "supposed to" have taken.  (Respondents' Exh. Q at 8-9)   Petitioner stated that he

16   not had "any problems following along the proceedings. . . ." (*Id.*)   The Court then stated,

17   "If at any time you have a question of me or of your attorney, will you not hesitate and tell

18   me that you have a question?"  Petitioner replied, "Yes."  (*Id.*)

19        Before sentencing Petitioner in CR2003-021342, the court noted that the plea

20   agreement stipulated to prison, and made the following findings:

21      [T]he Court finds as aggravating circumstances, the fact that the offense
          was committed while on release, which you admitted in the plea agreement.
22

23         I agree with Ms. Davis (defense counsel), criminal history has been
          taken into account with the plea to the substantive charge with the
24      enhancement.

25         Also, as an aggravating factor, the nature of the offense.  This is a
          crime that was committed against a victim of a pending case which you
26      admitted to in the factual basis.

27         With respect to mitigating circumstances, I do find as mitigating
          circumstances your deteriorating physical and mental health, also the
28      fact that there will be a probation tail.

1    (Respondents' Exh. Q at 21; Exh. S)   The court then sentenced Petitioner to an aggravated

2    term of 7.5 years' imprisonment in CR2003-021342.  (Respondents' Exh. Q at 21; Exh. S)

3    Pursuant to the plea agreement, the court dismissed the allegation that the offense was

4    committed while on release.  (Respondents' Exh. Q at 22)

5            In CR2002-014160, the court suspended the imposition of sentenced and placed

6    Petitioner on concurrent terms of 7 years probation on Count 1 and 5 years probation on

7    Count 6 to commence after he completed his prison sentence in CR2003-021342.

8    (Respondents' Exh. Q at 22-23; Exh. R)

9            Petitioner did not raise any objections during the sentencing hearing.  (Respondents'

10   Exh. Q)

11       **B.  Post-Conviction Proceedings/(Rule 32 of-right)**

12           By pleading guilty, Petitioner waived his right to a direct appeal, but retained the

13   right to seek review in a petition for post-conviction relief under Ariz.R.Crim.P. 32, a so-

14   called Rule 32 of-right proceeding.  *See* Ariz.R.Crim.P. 32.1.  On December 4, 2006,

15   Petitioner, proceeding *pro se*, filed a notice of post-conviction relief pursuant to

16   Ariz.R.Crim.P. 32 in both CR2002-014160 and CR2003-021342.  (Respondents' Exh. V)

17   Petitioner was appointed counsel for post conviction proceedings.  (Respondents' Exh. W)

18   On April 8, 2005, counsel filed a notice of completion of post-conviction review, notifying

19   the court that he was unable to find any claims to raise, and requesting that Petitioner be

20   given additional time to file a *pro per* petition.  (Respondents' Exh. X)   The court granted

21   Petitioner additional time to file a *pro per* petition.  (*Id.*)

22

23           On July 5, 2005, Petitioner filed a petition for post-conviction relief, raising the

24   following claims:

25                1.  The trial court lacked subject matter jurisdiction to proceed because the
                 indictments in CR2002-014160 and CR2003-021342 were fatally defective
26               in violation of the Sixth and Fourteenth Amendments because they did not
                 charge an offense.

27                2. Counsel was ineffective in violation of the Sixth Amendment for failing to:

28

(a) request a mental evaluation and to assert an insanity defense; (b) failing to challenge the defective indictments; (c) failing to challenge the lack of probable cause to support the indictments; (d) failing to adequately confer with Petitioner regarding the charges, his defenses, and the consequences of pleading guilty; (e) failing to challenge the historical prior allegation from CR2002-014160 in the plea agreement in CR2003-021342; (f) for failing to object to the trial court's aggravating circumstance finding that Petitioner committed the offense in CR2003-021342 while on release in CR2002-014160; and (g) for failing to object to improper aggravating factors relied upon by the trial court at sentencing;

3. Rule 32 counsel was ineffective for failing to raise the foregoing claims of ineffective assistance of trial counsel in the petition for post-conviction relief; and

4. Petitioner's sentences were illegal because the aggravating factors were not found by a jury in violation of the Fifth, Sixth, and Fourteenth Amendments.

(Respondents' Exh. Y)

In view of the allegations of ineffective assistance of counsel, the court permitted appointed counsel to withdraw and appointed Petitioner new counsel. (Respondents' Exh. Z) Petitioner's new counsel filed a supplement to Petitioner's *pro per* petition for post-conviction relief asserting that the trial court improperly enhanced Petitioner's sentence pursuant to A.R.S. § 13-604 based on a contemporaneous conviction and that trial counsel was ineffective for failing to object to the court's reliance on a contemporaneous conviction to establish a historical prior conviction. (Respondents' Exh. AA) The State filed a response, to which Petitioner replied. (Respondents' Exhs. BB, CC)

On December 22, 2005, the court denied relief and dismissed the petition for post-conviction relief. (Respondents' Exh. DD) The court found that: (1) the indictment in the 2002 case was not fatally defective because it complied with Ariz.R.Crim.P. 13.2, moreover, Petitioner waived that claim by his plea agreement; (2) by pleading guilty, Petitioner waived his claims that defense counsel was ineffective for failing to present an insanity defense and for failing to challenge the grand jury's probable cause determination. Petitioner's claims that defense counsel failed to advise him of his rights was contradicted by the plea colloquy where Petitioner told the court that he read the plea agreement and understood the rights he was waiving; (3) Petitioner's aggravated sentences did not violate the Sixth Amendment, as discussed in *Blakely*, because Petitioner admitted facts related to the nature of the offense

1   which made him eligible to receive an aggravated sentenced in the 2003 case.  Petitioner

2   admitted the nature of the offense - hiring a hit-man to kill a witness in the 2002 case; and

3   (4) Petitioner's assertion that he did not have a prior conviction in the 2003 case lacked

4   merit because the fraudulent scheme occurred prior to the solicitation to commit first degree

5   murder, which Petitioner admitted during his change of plea colloquy.  (Respondents' Exh.

6   DD)

7        On January 5, 2006, Petitioner's counsel moved for rehearing.  (Respondents' Exh.

8   EE)  Thereafter, Petitioner filed a *pro se* motion for rehearing.  (Respondents' Exh. FF)

9   The court summarily denied the motions for rehearing.  (Respondents' Exh. GG)

10       On July 11, 2006, Petitioner filed a petition for review in the Arizona Court of

11  Appeals.  (Respondents' Exh. HH)  Petitioner argued that the trial court erred in denying

12  post-conviction review because: (1) the trial court proceeded on two fatally defective

13  indictments in violation of the Fourteenth Amendment; (2) the trial court proceeded

14  although Petitioner was denied the effective assistance of counsel in violation of the Sixth

15  Amendment; (3) the trial court relied on the 2002 plea agreement knowing that Petitioner's

16  counsel failed to discuss this case with him and failed to appear at the change of plea

17  hearing; (4) the trial court relied on the CR2003-021342 plea agreement even though

18  defense counsel was ineffective and even though Petitioner did not have a prior felony

19  conviction; (5) the trial court tricked Petitioner into signing the plea agreement in CR2003-

20  021342 by stating that the court would dismiss the allegation that the offense was committed

21  while on felony release, but the court still used this allegation to enhance his sentence, which

22  allegedly violated the double jeopardy clause; (6) Petitioner was not convicted of the crimes

23  in the plea agreement until September 17, 2004, when he was sentenced; (7) the terms

24  contained in paragraph 7 of the plea agreement violated "the law under *Blakely*;" and (8)

25  Petitioner could not have knowingly, intelligently and voluntarily entered into the two plea

26  agreements because he had been diagnosed as "seriously mentally ill" by Maricopa County

27  Jail doctors.  (Respondents' Exh. HH)  On June 19, 2007, the Arizona Court of Appeals

28  summarily denied review.  (Respondents' Exh. II)

After receiving several extensions, on May 15, 2008, Petitioner filed a petition for review by the Arizona Supreme Court. (Respondents' Exh. JJ) Petitioner raised the same issues he had raised in his petition for post-conviction relief and in his petition for review. (Respondents' Exh. JJ) On July 28, 2008, the Arizona Supreme Court summarily denied review. (Respondents' Exh. KK)

**C. Federal Petition for Writ of Habeas Corpus**

On July 27, 2009, Petitioner filed a timely[3] Petition for Writ of Habeas Corpus in this Court, raising the following claims:

> **Ground One:** Ineffective assistance of counsel/invalid sentence.
>
> **Ground Two:** Illegal sentence, the court improperly relied on a contemporaneous conviction to enhance his sentence pursuant to A.R.S. § 13-604.
>
> **Ground Three:** Petitioner's sentence in CR2002-014160 was excessive in violation of the Eighth Amendment's prohibition against cruel and unusual punishment.
>
> **Ground Four:** The trial court breached the terms of the plea agreement.
>
> **Ground Five:** The trial court failed to establish that subject matter jurisdiction and venue were proper.
>
> **Ground Six:** At all stages of the criminal proceedings, Petitioner was under such duress that his mental capacity was diminished.
>
> **Ground Seven:** Petitioner's rights under the Double Jeopardy Clause were violated.
>
> **Ground Eight:** The trial court did not establish a sufficient factual basis to support Petitioner's conviction in CR2003-021342.
>
> **Ground Nine:** Petitioner did not knowingly and voluntarily waive his Sixth Amendment rights articulated in *Blakely*.

(Docs. 1, 4) Respondents have filed an Answer in opposition to the Petition, to which Petitioner has replied. (Docs. 21, 36) Respondents subsequently filed a Motion to Dismiss Petitioner's challenge to his sentence in CR2003 asserted in Grounds One and Two. (Doc. 66) After that motion was fully briefed, on January 14, 2011, the undersigned issued a

---

[3] Respondents concede that the Petition is timely in accordance with 28 U.S.C. § 2244. (Doc. 21 at 16-18)

1   Report and Recommendation recommending that Respondents' Motion to Dismiss be

2   granted.  (Docs. 66, 76)  Based on the reasoning in that Report and Recommendation, the

3   challenge to Petitioner's sentence in the 2003 case asserted in Grounds One and Two should

4   be dismissed and will not be addressed further in this Report and Recommendation.

5   **II.  Exhaustion and Procedural Bar**

6          In their Answer, Respondents argue that Petitioner did not properly exhaust his state

7   remedies on Grounds III, V, VII, and VIII because he did not fairly present those claims to

8   the Arizona Court of Appeals.  Respondents further argue that those claims are now

9   procedurally defaulted and should be dismissed.

10          **A.  Relevant Legal Principles**

11          Generally, a federal court has authority to review a state prisoner's claims only if

12   available state remedies have been exhausted. *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)

13   (*per curiam* ). The exhaustion doctrine, first developed in case law, has been codified at 28

14   U.S.C. § 2254(b) and (c). When seeking habeas relief, the burden is on the petitioner to show

15   that he has properly exhausted each claim. *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th

16   Cir.1981) (*per curiam*), *cert. denied*, 455 U.S. 1023 (1982).  Exhaustion is not a mere

17   affirmative defense, wherein the burden of proof lies on the Respondents.  To the contrary,

18   when seeking habeas relief, the burden is on the petitioner to show that he has properly

19   exhausted each claim. *Cartwright v. Cupp*, 650 F.2d at 1104 (9th Cir. 1981).  A failure to

20   exhaust defense under 28 U.S.C. § 2254 is not waived by failure to raise it. "A State shall not

21   be deemed to have waived the exhaustion requirement or be estopped from reliance upon the

22   requirement unless the State, through counsel, expressly waives the requirement." 28 U.S.C.

23   § 2254(b)(3).

24          Ordinarily, "to exhaust one's state court remedies in Arizona, a petitioner must first

25   raise the claim in a direct appeal or collaterally attack his conviction in a petition for

26   post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir.

27   1994). Only one of these avenues of relief must be exhausted before bringing a habeas

28   petition in federal court. This is true even where alternative avenues of reviewing

1    constitutional issues are still available in state court. *Brown v. Easter*, 68 F.3d 1209, 1211

2    (9th Cir.1995).  To exhaust state remedies, a petitioner must afford the state courts the

3    opportunity to rule upon the merits of his federal claims by "fairly presenting" them to the

4    state's "highest" court in a procedurally appropriate manner.  *Baldwin v. Reese*, 541 U.S. 27,

5    29 (2004) (stating that "[t]o provide the State with the necessary 'opportunity,' the prisoner

6    must "fairly present" her claim in each appropriate state court . . . thereby alerting the court

7    to the federal nature of the claim.").  In Arizona, unless a prisoner has been sentenced to

8    death, the "highest court" requirement is satisfied if the petitioner has presented his federal

9    claim to the Arizona Court of Appeals either on direct review or in a petition for post-

10   conviction relief.  *See Castillo v. McFadden,* 399 F.3d 993, 999 (9th Cir. 2004); *Crowell v.*

11   *Knowles,* 483 F.Supp.2d 925 (D.Ariz. 2007) (discussing *Swoopes v. Sublett*, 196 F.3d 1008,

12   1010 (9th Cir. 1999)).

13          To result in exhaustion, claims must be fairly presented.  That is, the petitioner must

14   provide the state courts with a "fair opportunity" to apply controlling legal principles to the

15   facts bearing upon his federal claim.  *Picard v. Conor*, 404 U.S. 270, 276-77 (1971).  A

16   claim has been fairly presented if petitioner has described in state court both the operative

17   facts and the federal legal theory upon which he bases his claim in federal court.  *Duncan v.*

18   *Henry*, 513 U.S. 364, 365-66 (1995) (stating that "[i]f a habeas petitioner wishes to claim that

19   an evidentiary ruling at a state court trial denied him the due process of law guaranteed by

20   the Fourteenth Amendment, he must say so, not only in federal court, but in state court.");

21   *Galvan v. Alaska Department of Corrections*, 397 F.3d 1198, 1205 (9th Cir. 2005) (stating

22   that "[t]o exhaust a federal constitutional claim in state court, a petitioner has to have, at

23   least, explicitly alerted the court that she was making a federal constitutional claim.").

24   General appeals to broad constitutional principles, such as due process, equal protection, and

25   the right to a fair trial, do not establish fair presentation of a federal constitutional claim.

26   *Castillo*, 399 F.3d at 1002 (observing that "[e]xhaustion requires more than drive-by citation,

27   detached from any articulation of an underlying federal legal theory."); *Lyons v. Crawford*,

28   232 F.3d 666, 669 (9th Cir. 2000), *amended on other grounds*, 247 F.3d 904 (9th Cir. 2001);

1    *Shumway v. Payne*, 223 F.3d 982, 987 (9th Cir. 2000) (insufficient for prisoner to have made

2    "a general appeal to a constitutional guarantee," such as a naked reference to "due process,"

3    or to a "constitutional error" or a "fair trial"). Similarly, a mere reference to the "Constitution

4    of the United States" does not preserve a federal claim. *Gray v. Netherland*, 518 U.S. 152,

5    162-63 (1996).  Even if the basis of a federal claim is "self-evident" or if the claim would be

6    decided "on the same considerations" under state or federal law, the petitioner must make the

7    federal nature of the claim "explicit either by citing federal law or the decision of the federal

8    courts . . . ."  *Lyons*, 232 F.3d at 668.  A state prisoner does not fairly present a claim to the

9    state court if the court must read beyond the petition or brief filed in that court to discover the

10   federal claim.  *Baldwin*, 541 U.S. at 27.  In summary, a "petitioner fairly and fully presents a

11   claim to the state court for purposes of satisfying the exhaustion requirement if he presents

12   the claim: (1) to the proper forum; (2) through the proper vehicle, and (3) by providing the

13   proper factual and legal basis for the claim."  *Insyxiengmay v. Morgan*, 403 F.3d 657, 668

14   (9th Cir. 2005) (citations omitted).

15        Ordinarily, unexhausted claims are dismissed without prejudice. *Johnson v. Lewis*,

16   929 F.2d 460, 463 (9th Cir.1991). However, where a petitioner has failed to properly exhaust

17   his available state remedies, and those remedies are now no longer available because of some

18   procedural bar, the petitioner has "procedurally defaulted" and is generally barred from

19   seeking habeas relief.

20        Where a prisoner fails to "fairly present" a claim to the state courts in a procedurally

21   appropriate manner, state court remedies may, nonetheless, be "exhausted."  This type of

22   exhaustion is often referred to as "procedural default" or "procedural bar." *Ylst v.*

23   *Nunnemaker*, 501 U.S. 797, 802-05 (1991); *Coleman*, 501 U.S. at 731-32. There are two

24   categories of procedural default.  First, a state court may have applied a procedural bar when

25   the prisoner attempted to raise the claim in state court.  *Nunnemaker*, 501 U.S. at 802-05.

26   Second, the state prisoner may not have presented the claim to the state courts, but pursuant

27   to the state courts' procedural rules, a return to state court would be "futile."  *Teague v. Lane*,

28   489 U.S. 288, 297-99 (1989).

1    Dismissal with prejudice of a procedurally barred or procedurally defaulted habeas

2    claim is generally proper absent "cause and  prejudice" or a "miscarriage of justice" which

3    would excuse the default.  *See Dretke v. Haley*, 541 U.S. 386, 393-94 (2004); *Reed v. Ross*,

4    468 U.S. 1, 11 (1984).  To establish cause, a petitioner must establish that some objective

5    factor external to the defense impeded his efforts to comply with the state's procedural rules.

6    *Id.*  The following objective factors may constitute cause: (1) interference by state officials,

7    (2) a showing that the factual or legal basis for a claim was not reasonably available, or (3)

8    constitutionally ineffective assistance of counsel.  *Id.*   To establish prejudice, a prisoner must

9    demonstrate that the alleged constitutional violation "worked to his actual and substantial

10   disadvantage, infecting his entire trial with error of constitutional dimension."  *United States*

11   *v. Frady*, 456 U.S. 152, 170 (1982).  Where petitioner fails to establish cause, the court need

12   not reach the prejudice prong.

13   To establish a "fundamental miscarriage of justice" resulting in the conviction of one

14   who is actually innocent, a state prisoner must establish that it is more likely than not that no

15   reasonable juror would have found him guilty beyond a reasonable doubt in light of new

16   evidence.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995); 28 U.S.C. § 2254(c)(2)(B).

17   **B.  Application of Law to Petitioner's Claims**

18   **1.  Ground Three**

19   In Ground Three, Petitioner claims that his sentence in CR2002-014160 is excessive

20   in violation of the Eighth Amendment prohibition against cruel and unusual punishment.

21   (Doc. 4 at 16-17)   Respondents assert that this claim is procedurally defaulted because

22   Petitioner did not properly present this federal claim to the Arizona Court of Appeals on

23   post-conviction review.  (Respondents' Exh. HH)  The record confirms that Petitioner never

24   presented to the Arizona courts an Eighth Amendment challenge to his sentence in CR2002-

25   014160.  (Respondents' Exh. Y, HH)   Thus, as Respondents argue, Petitioner did not fairly

26   present his Eighth Amendment claim to the State courts.  *See Baldwin*, 541 U.S. at 29 ("To

27   provide the State with the necessary 'opportunity,' the prisoner must "fairly present" her

28   claim in each appropriate state court . . . thereby alerting the court to the federal nature of the

1  claim.").  As discussed below in Section C, Petitioner's Eighth Amendment claim asserted in

2  Ground Three is procedurally defaulted and barred from federal habeas corpus review.

3      **2.  Ground Five**

4      In Ground Five, Petitioner argues that the "trial court did not properly establish

5  subject matter jurisdiction over the charges brought against [Petitioner] in CR2002-014160"

6  and thus, "venue was not proper." (Doc. 4 at 20-25)  Petitioner further argues that venue was

7  improper because, as a corporate officer, he was protected by the "corporate veil" and "the

8  court of criminal law has no jurisdiction over matters of contractual disputes."  (Doc. 4 at 20-

9  25)  He asserts that because venue was improper, the court lacked subject matter jurisdiction.

10  (*Id.*)  Although Petitioner challenged the trial court's subject matter jurisdiction on post-

11  conviction review, he never based that claim on a lack of venue or argued that he was

12  protected from prosecution by the "corporate veil."  (Respondents' Exhs. Y, HH, JJ)

13  Accordingly, Petitioner did not fairly present his claims asserted in Ground Five to the state

14  courts and those claims are not properly exhausted.  *See Baldwin*, 541 U.S. at 29 ("To

15  provide the State with the necessary 'opportunity,' the prisoner must "fairly present" her

16  claim in each appropriate state court . . . thereby alerting the court to the federal nature of the

17  claim.").  As discussed in Section C below, the claims asserted in Ground Five are

18  procedurally defaulted and barred from habeas corpus review.

19      **3.  Ground Seven**

20      In Ground Seven, Petitioner argues his guilty plea to Counts 1 and 6 in

21  CR2002–014160 on July 2, 2004 violated the Double Jeopardy Clause because he had

22  already pled guilty to those charges on May 12, 2003.  (Doc. 4 at 29-30)  Petitioner further

23  argues that, by ordering that his sentence in CR2002-014160 run consecutively to his

24  sentence in CR2003-021342, the trial court violated the Double Jeopardy Clause, A.R.S. §

25  13-116, and *State v. Gordon*, 161 Ariz. 308, 312, 778 P.2d 1204, 1208 (Ariz. 1989).  (Doc. 4

26  at 30-34)  Respondents assert that Petitioner did not properly exhaust his Double Jeopardy

27  claims because he failed to present them to the Arizona courts.  (Respondents' Exh. Y, HH)

28  The record reflects that Petitioner never presented the Double Jeopardy claims asserted in

1    Ground Seven to the Arizona courts.  As discussed in Section C below, Petitioner's claims in

2    Ground Seven are procedurally defaulted and barred from federal habeas corpus review.  *See*

3    *Castille*, 489 U.S. at 350-51.

4         **4. Ground Eight**

5         In Ground Eight, Petitioner contends that the trial court erred when it:

6         (1) acted on a defective indictment for conspiracy to commit first degree murder, the

7    indictment in CR2003-021342; (2) attempted to establish a factual basis for a crime not

8    charged in the indictment – solicitation to commit first degree murder; (3) considered

9    aggravating factors that were not charged in the indictment; (4) did not establish guilt of any

10   of the aggravating factors by providing a sufficient factual basis for the aggravating factors;

11   (5) forfeited subject matter jurisdiction by violating Petitioner's Sixth and Fourteenth

12   Amendment rights; and (6) sentenced an innocent man to prison.[4]  (Doc. 4 at 42-46)

13   Respondents assert that Petitioner did not properly exhaust these claims because he never

14   presented them to the Arizona courts.  Contrary to Respondents' assertion, the record reflects

15   that Petitioner presented several of these issues to the Arizona Courts on post-conviction

16   review.  (Respondents' Exh. Y, HH)

17        The Court will consider each assertion separately.

18        **Ground 8.1.**  Defective Indictment for Conspiracy to Commit First Degree Murder.
     (CR2003-021342)
19
20        In his Petition for Post-Conviction Relief, Petitioner asserted that the indictments in

21   CR2003-021342 and CR2002-014160 were fatally defective rendering Petitioner's

22   convictions a violation of the Due Process Clause. (Respondents' Exh. Y) Although

23   Petitioner referred to the indictment in CR2003-021342, his entire argument pertained to the

24   indictment in CR2002-014160 charging Petitioner with two counts of fraudulent schemes

25   and artifices, three counts of theft, and two counts of trafficking in stolen property.

26   (Respondents' Exhs. C, Y)   In view of the arguments presented in the petition for post-

27        [4]  The Court will refer to these claims as Grounds 8.1, 8.2, 8.3, 8.4, 8.5 and 8.6.  (Doc. 4 at

28   42)

1   conviction relief, the post-conviction court stated that Petitioner "claims that his Indictment

2   in the 2002 case is fatally defective, and the court, thereby, has no jurisdiction."

3   (Respondents' Exh. DD) The post-conviction court rejected Petitioner's claim finding that

4   the "Indictment [in the 2002 case] comports with [Arizona Rule of Criminal Procedure]

5   13.2," and that Petitioner "waived his claim by his plea agreement." (Respondents' Exh. DD)

6   On appeal of the denial of his petition for post-conviction relief, Petitioner again argued that

7   the indictments in CR2002-014160 and CR2003-021342 were defective.  (Respondents' Exh.

8   HH)

9        Although Petitioner mentioned both the indictment in the 2002 and 2003 cases in

10  post-conviction proceedings, his arguments before the post-conviction court pertained solely

11  to the indictment in the 2002 case.  As such, he did not fairly present his challenge to the

12  2003 indictment to the state courts on post-conviction review.  *See Insyxiengmay*, 403 F.3d at

13  668 (a petitioner fully and fairly presents a claim for exhaustion purposes by providing the

14  proper legal and factual basis for the claim).   As discussed in Section C below, that claim is

15  procedurally defaulted and barred from federal habeas corpus review.

16       **Ground 8.2.**  Trial Court "attempt[ed] to establish factual basis for a crime not
          charged - solicitation to commit first degree murder a class 3 felony. (Doc. 4 at 42)

17
         Respondents assert that Petitioner did not properly exhaust this claim and that it is
18
    procedurally defaulted.  (Doc. 21 at 25)  Regardless of whether Petitioner properly exhausted
19
    this claim, Petitioner is not entitled to relief on this claim.  *See* 28 U.S.C. § 2254(b)(2) ("An
20
    application for a writ of habeas corpus may be denied on the merits, notwithstanding the
21
    failure of the applicant to exhaust the remedies available in the courts of the State.").
22
         Petitioner's assertion that the trial court "attempt[ed] to establish a factual basis for a
23
    crime not charged" in the indictment - solicitation to commit first degree murder - is not based
24
    on federal law.  (Doc. 4 at 42)  Rather, Petitioner bases his claim in Ground 8.2 solely on state
25
    law.  (Doc. 4 at 42, 45-46)  A state prisoner can obtain federal habeas relief only if his
26
    conviction violates the Constitution or the laws and treaties of the United States.  *Engle v.*
27
    *Isaac*, 456 U.S. 107, 119 (1982).  State law claims are not subject to habeas corpus review by
28

1   this Court.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (explaining that "it is not the

2   province of a federal habeas court to reexamine state-court determinations on state-law

3   questions.").  Accordingly, Petitioner's claim asserted in Ground 8.2 is not cognizable on

4   federal habeas corpus review and should be denied on that basis.

5        **Grounds 8.3 and 8.4.** Trial court used Aggravating Factors not Contained in the
         Indictment and did not Establish a Sufficient Factual Basis for Aggravating Factors

6        Although Petitioner does not specify, the claims asserted in Grounds 8.3 and 8.4

7   logically pertain to his sentence imposed in CR2003-021342 because sentencing was

8   suspended in CR2002-014160 and Petitioner was placed on probation.  (Respondents' Exhs.

9   N, R)  Respondents assert that Petitioner did not properly exhaust his available state remedies

10  on theses claims.  (Doc. 21)   The Court need not resolve the exhaustion issue because, even if

11  Petitioner exhausted these claims, he is not entitle to relief on these claims. *See* 28 U.S.C. §

12  2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits,

13  notwithstanding the failure of the applicant to exhaust the remedies available in the courts of

14  the State.").

15       Grounds 8.3 and 8.4 appear to assert the same claim as Ground Nine - that his

16  "sentence" violates the Sixth Amendment as construed in *Blakely v. Washington*, 542 U.S.

17  296 (2004), because a judge, not a jury, determined "the elements beyond a reasonable doubt"

18  and he did not waive his Sixth Amendment right to a jury determination of aggravating

19  factors.  As set forth in the discussion of Ground Nine, Petitioner's challenge to his sentence

20  in the 2003 case is moot. *See* Section IV.C, infra.

21       **Ground 8.5** - Trial Court forfeited Subject Matter Jurisdiction

22       In Ground 8.5, Petitioner asserts that the trial court "forfeited subject matter

23  jurisdiction" by violating Petitioner's Sixth Amendment right to access the court and his Due

24  Process rights.  (Doc. 4 at 42)  On post-conviction review, Petitioner argued that the trial court

25  "had no subject matter jurisdiction to proceed upon a fatally defective indictment" in violation

26  of "due process." (Respondents' Exh. Y at 14-15)  Petitioner further argued that, if the post-

27  conviction court agreed that Petitioner was "constructive(ly)" denied counsel, "it is

28

1   defendant's argument that the court lost its jurisdiction because the court was not completed
2   as Amendment VI requires, by providing counsel."  (Respondents' Exh. Y at 17)

3        The trial court rejected Petitioner's claim that the indictment in the 2002 case was
4   defective and that the court, thereby had no jurisdiction.  (Respondents' Exh. DD)   The court
5   found that the indictment comported with Arizona Rule of Criminal Procedure 13.2.
6   (Respondents' Exh. DD)   The court also rejected Petitioner's claim of ineffective assistance
7   of counsel and did not discuss whether an alleged denial of effective assistance of counsel
8   would have deprived the court of subject matter jurisdiction.

9        On review of the denial of his post-conviction petition to the Arizona Court of
10  Appeals, Petitioner presented a rambling list of issues and it is hard to discern precisely what
11  claims Petitioner presented on appeal.  (Respondents' Exh. HH)   Even assuming Petitioner
12  properly exhausted his claims asserted in Ground 8.5, he is not entitled to relief on those
13  claims.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be
14  denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies
15  available in the courts of the State.").

16       Petitioner has not shown that the State court's determination that the indictment was
17  valid, and thus the court did not lose jurisdiction, was contrary to, or based on an
18  unreasonable application of federal law or that it was based on an unreasonable determination
19  of the facts.  28 U.S.C. § 2254.  Accordingly, Petitioner is not entitled to relief on this claim.

20       Additionally, Petitioner has cited no authority for his assertion that, if defense counsel
21  was found to have rendered ineffective assistance, the trial court lacked jurisdiction to
22  proceed.  Petitioner's assertion of a Sixth Amendment violation is separate from an assertion
23  that the trial court lacked subject matter jurisdiction.  Accordingly, this claim does not entitle
24  Petitioner to habeas corpus relief.

25       **Ground 8.6.** Trial court sentenced an innocent man to prison

26       In Ground 8.6, Petitioner asserts that he was actually innocent of the crime alleged in
27  the 2003 case.  (Doc. 4 at 42-43)  Petitioner did not assert this claim of actual innocence to the
28  Arizona courts.  (Respondents' Exh. Y, HH)   Accordingly, Petitioner's claim of actual

1  innocence is procedurally defaulted and barred from federal habeas corpus review as

2  discussed in Section C, below.

3  **C. Procedural Default**

4  As discussed above, Petitioner did not properly present his claims raised in Grounds

5  Three, Five, Seven, 8.1 and 8.6 to the Arizona courts.  The Court finds that those claims are

6  procedurally barred, because Petitioner failed to properly present those claims to the Arizona

7  courts and a return to state court to present those claims would be futile.  Petitioner is time-

8  barred from raising the foregoing claims in a successive petition for post-conviction relief

9  because the time for filing a notice of post-conviction relief has long expired.  *See*

10 Ariz.R.Crim.P. 32.1 and 32.4 (a petition for post-conviction relief must be filed "within ninety

11 days after the entry of judgment and sentence or within thirty days after the issuance of the

12 order and mandate in the direct appeal, whichever is later.")  Likewise, Petitioner is time-

13 barred from seeking appellate review because Arizona Rules of Criminal Procedure 32.9(c)

14 and 31.19(a) require petitions for review from the denial of a petition for post-conviction

15 relief, and petitions for review to be filed within 30 days after the final decision of the trial

16 court or the court of appeals.  Thus, Petitioner is time-barred from seeking further review in

17 the state court.

18 Additionally, under Rule 32.2(a) of the Arizona Rules of Criminal Procedure, a

19 defendant is precluded from raising claims that could have been raised on direct appeal or in

20 any previous collateral proceeding.  *See State v. Berryman,* 178 Ariz. 617, 624, 875 P.2d 850,

21 857 (Ariz. Ct. App. 1994) (defendant's claim that his sentence had been improperly enhanced

22 by prior conviction was precluded by defendant's failure to raise issue on appeal).

23 Because claims asserted in Grounds Three, Five, Seven, 8.1 and 8.6 are procedurally

24 defaulted, federal habeas corpus review is only available if he establishes cause and prejudice

25 or a fundamental miscarriage of justice.  To establish "cause", a petitioner must establish that

26 some objective factor external to the defense impeded his efforts to comply with the state's

27 procedural rules.  *Murray,* 477 U.S. at 488-492.  The following objective factors may

28 constitute cause: (1) interference by state officials, (2) a showing that the factual or legal basis

1  for a claim was not reasonably available, or (3) constitutionally ineffective assistance of

2  counsel. *Id.*    Prejudice is actual harm that results from the constitutional violation or error.

3  *Magby v. Wawrzaszek,* 741 F.2d 240, 244 (9th Cir. 1984).  Where petitioner fails to establish

4  cause for his procedural default, the court need not consider whether petitioner has shown

5  actual prejudice resulting from the alleged constitutional violations.  *Smith v. Murray,* 477

6  U.S. 527, 533 (1986).  Petitioner offers no argument sufficient to overcome the procedural

7  bar.  (*See* Doc. 36)  Petitioner's status as an inmate and lack of legal knowledge do not

8  constitute cause for his failure to present his claims to the Arizona  courts.  *Hughes v. Idaho*

9  *State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986) (finding that an illiterate *pro se*

10 petitioner's lack of legal assistance did not amount to cause to excuse a procedural default);

11 *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988) (finding that petitioner's arguments

12 concerning his mental health and reliance upon jailhouse lawyers did not constitute cause.)

13 Petitioner has not shown cause or prejudice to excuse the procedural default.

14     Petitioner has also failed to show that failure to consider his defaulted claims will result

15 in a fundamental miscarriage of justice.  A federal court will only review a procedurally

16 defaulted habeas claim on the merits if petitioner demonstrates that failure to consider the

17 merits of the claim will result in a "fundamental miscarriage of justice."  A "fundamental

18 miscarriage of justice" occurs when a constitutional violation has probably resulted in the

19 conviction of one who is actually innocent.  *Schlup v. Delo,* 513 U.S. 298 (1995).  The

20 fundamental miscarriage of justice exception applies to a "narrow class of cases" in which a

21 petitioner makes an extraordinary showing that an innocent person was probably convicted

22 because of a constitutional violation.  *Schlup,* 513 U.S. at 321 (1995).  Petitioner has the

23 burden of demonstrating that a "constitutional violation has resulted in the conviction of one

24 who is actually innocent."  *Id.* at 327.  To establish the requisite probability, Petitioner must

25 prove with new reliable evidence that "it is more likely than not that no reasonable juror

26 would have found petitioner guilty beyond a reasonable doubt."  *Id.* at 324, 327.   New

27 evidence presented in support of a fundamental miscarriage of justice claim may include

28 "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical

1   evidence that was not presented at trial." *Id.* at 324, *see also, House v. Bell,* 547 U.S. 518

2   (2006) (stating that a fundamental miscarriage of justice contention must involve evidence

3   that the trial jury did not have before it).

4          Petitioner has not offered any new evidence, or asserted that, in light of any newly

5   discovered evidence, "it is more likely than not that no reasonable juror would have found

6   petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 324, 327.

7          Because Petitioner has not established any basis to excuse his procedural default,

8   Petitioner's claims asserted in Grounds Three, Five, Seven, 8.1 and 8.6 are barred from

9   federal habeas corpus review.  Respondents alternatively argue that Petitioner's guilty plea

10  bars federal habeas corpus review of Grounds Three and Eight.  Because the Court has

11  already disposed of Grounds Three and Eight on other grounds, it need not reach

12  Respondents' waiver argument.

13  **III.  Grounds Four and Six**

14         Respondents assert that Grounds Four and Six raise claims that are not cognizable on

15  federal habeas corpus review because those claims assert violations of state, not federal, law.

16  (Doc. 21 at 27-31)

17         **A.  Ground Four**

18         In Ground Four, Petitioner contends that the trial court breached the plea agreement in

19  CR2003-021342 by aggravating his sentence based on an allegation that the offense was

20  committed while Petitioner was on felony release even though that allegation was dismissed

21  pursuant to paragraph three of the plea agreement.  (Doc. 4 at 18-19)  Respondents assert that

22  Petitioner's claim in Ground Four is based solely on state law and, therefore, is not cognizable

23  on federal habeas corpus review.

24          "A habeas petition must allege the petitioner's detention violates the constitution, a

25  federal statute or a treaty." *Franzen v. Brinkman*, 877 F.2d 26 (9th Cir.1989), *cert. denied,*

26  *Franzen v. Deeds* 493 U.S. 1012 (1989) (citing 28 U.S.C. § 2254(c)(3)).  "[F]ederal habeas

27  corpus does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)

28  (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).  Although Petitioner cites several federal

1   cases in support of his claim in Ground Four, he does not specifically assert a federal

2   constitutional claim.  (Doc. 4 at 19)  Petitioner cannot transform his state law claim into a

3   federal claim by merely citing federal cases or baldly asserting that his constitutional rights

4   were violated.  *See Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1999) (citing *Langford v.*

5   *Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) (holding that a petitioner may not "transform a state

6   law issue into a federal one merely by asserting a violation of due process," and that "alleged

7   errors in the application of state law are not cognizable in federal habeas corpus"

8   proceedings.))

9          Moreover, as Respondents argue, Petitioner's claim in Ground Four lacks merit.

10   Petitioner correctly asserts that the plea agreement in CR2003-021342 provided for the

11   dismissal of the allegation that the offense was committed while Petitioner was on felony

12   release.  (Respondents' Exh. O, ¶ 3)  Dismissing that allegation, however, only meant that

13   Petitioner's sentence could not be enhanced or increased by two years pursuant to A.R.S. §

14   13-604.  The dismissal of that allegation did not prohibit the court from using that fact as an

15   aggravating factor under A.R.S. § 13-702(21) which provides that the court may consider

16   "[a]ny other factor that the court deems appropriate to the ends of justice" when imposing a

17   sentence.  *See State v. Clough*, 171 Ariz. 217, 225, 829 P.2d 1263, 1271 (Ariz.Ct.App. 1992)

18   (stating that "[t]he trial court may consider as aggravating circumstances the defendant's prior

19   record and the fact that he committed a crime while on release from another conviction.")

20   (citing *State v. LeMaster*, 137 Ariz. 159, 166, 699 P.2d 592, 599 (Ariz.Ct.App. 1983)).

21          In summary, Petitioner's claim in Ground Four is based on state law and is not

22   cognizable on federal habeas corpus review.  Moreover, his claim lacks merit.

23   **B.  Ground Six**

24          In Ground Six, Petitioner asserts that at every stage of the criminal proceedings, he was

25   under such duress that his mental capacity was diminished.  (Doc. 4 at 26-28)   Respondents

26   assert that this claim is not cognizable on habeas corpus review because Petitioner does not

27   present a federal claim.

28

1    "A habeas petition must allege the petitioner's detention violates the constitution, a

2    federal statute or a treaty." *Franzen v. Brinkman*, 877 F.2d 26 (9th Cir.1989), *cert. denied,*

3    *Franzen v. Deeds* 493 U.S. 1012 (1989) (citing 28 U.S.C. § 2254(c)(3)).  "[F]ederal habeas

4    corpus does not lie for errors of state law."  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)

5    (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).  Although Petitioner cites several federal

6    cases in support of his claim in Ground Six, he does not specifically assert a federal

7    constitutional claim.  (Doc. 4 at 26-28)  Petitioner cannot transform his state law claim into a

8    federal claim by merely citing federal cases or by asserting that his constitutional rights were

9    violated.  *See Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1999) (a habeas petition may not

10   "transform a state law issue into a federal one merely by asserting a due process violation.").

11   Moreover, as Respondents assert, Petitioner's claim lacks merit.  During the change of

12   plea and sentencing hearings, the court inquired into Petitioner's medication and ability to

13   understand the proceedings.  (Respondents' Exh. P at 3-4; Exh. Q at 8-9)  The court asked

14   what medications Petitioner was taking, how long he had been taking those medications, if he

15   had taken the prescribed dose at the prescribed time, and whether he had taken any other

16   medication.  (Respondents' Exh. P at 3-4)  The court specifically asked whether Petitioner

17   was able to understand the proceedings.  (Respondents' Exh. P at 3-4)   In response, Petitioner

18   stated that he has taken the proper doses of his prescribed medications and the prescribed

19   time.  (Respondents' Exh. P at 3-4)  Petitioner advised the court that he understood the

20   proceedings.  (Respondents' Exh. P at 3-4)

21   Likewise, during the sentencing hearing, the court asked Petitioner if he had taken his

22   medication as prescribed and whether he understood the proceedings.  (Respondents' Exh. Q

23   at 8-9)  Petitioner responded that he had taken his medication as prescribed and that he

24   understood the proceedings.  (Respondents' Exh. Q at 8-9)   There is nothing in the record

25   indicating that Petitioner did not understand the proceedings.  (Respondents' Exhs. P, Q)

26   In summary, because Petitioner fails to present a federal claim in Ground Six, it is not

27   cognizable on federal habeas corpus review.  Moreover, Petitioner's assertion that his capacity

28   was diminished during the entire criminal proceedings lacks merit.

**IV.  Grounds One and Nine**

Respondents assert that although Grounds One and Nine are properly before the Court on habeas corpus review, they lack merit.  The Court will consider Petitioner's claims asserted in Grounds One and Nine after discussing the standard of review.

**A.  Standard of Review**

This Court's analysis of the merits of Petitioner's claims is constrained by the applicable standard of review set forth in 28 U.S.C. § 2254(d), as amended in 1996 by the Antiterrorism and Effective Death Penalty Act ("AEDPA").  The ADEPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).  The standard in § 2254(d) is "meant to be" "difficult to meet." *Harrington v. Richter*, ___ U.S., ___ , 2011 WL 148587, at * 12 (January 19, 2011).  Section "2254 stops short of imposing a complete bar on federal court relitigation of claims already rejected in state court proceedings."  *Id.* (citations omitted). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunction in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979)).

Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the United States Supreme Court, § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2). *Harrington*, 2011 WL 148587; *see also Mancebo v. Adams*, 435 F.3d 977, 978 (9th Cir. 2006).  To determine whether a state court ruling was "contrary to" or involved an "unreasonable application" of federal law, courts look exclusively to the holdings of the Supreme Court which existed at the time of the state court's decision. *Harrington*, ___U.S.___, 2011 WL 148587, * 11 (citing *Renico v. Lett*, 559 U.S. ___, (2010) (slip. op. at 11-12)).  The Ninth Circuit has acknowledged that it cannot reverse a

1    state court decision merely because that decision conflicts with Ninth Circuit precedent on a

2    federal constitutional issue. *Brewer v. Hall*, 378 F.3d 952, 957 (9th Cir. 2004); *Clark v.*

3    *Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003). Even if the state court neither explained its

4    ruling nor cites United States Supreme Court authority, the reviewing federal court must

5    nevertheless examine Supreme Court precedent to determine whether the state court

6    reasonably applied federal law. *Harrington*, 2011 WL 148587 at * 9 (citing *Early v. Packer*,

7    537 U.S. 3, 8 (2003). The United States Supreme Court in *Early* expressly held, and recently

8    reaffirmed in *Harrington*, that citation to federal law is not required and that compliance with

9    the habeas statute "does not even require awareness of our cases, so long as neither the

10   reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8;

11   *Harrington*, 2011 WL at * 9. "Where a state court's decision is unaccompanied by an

12   explanation, the habeas petitioner's burden still must be met by showing there was no

13   reasonable basis for the state to deny relief. This is so whether or not the state court reveals

14   which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a

15   'claim', not a component of one, has been adjudicated." *Harrington*, 2011 WL 148587 at * 9.

16          Under § 2254(d), a state court's decision is "contrary to" federal law if it applies a rule

17   of law "that contradicts the governing law set forth in [Supreme Court] cases or if it confronts

18   a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and

19   nevertheless arrives at a result different from [Supreme Court] precedent." *Mitchell v.*

20   *Esparza*, 540 U.S 12, 14 (2003) (citations omitted); *Williams v. Taylor*, 529 U.S. 362, 411

21   (2000). A state court decision is an "unreasonable application of" federal law if the court

22   identifies the correct legal rule, but unreasonably applies that rule to the facts of a particular

23   case. *Williams*, 529 U.S. at 405; *Brown v. Payton*, 544 U.S. 133, 141 (2005). An incorrect

24   application of federal law does not satisfy this standard. *Yarborough v. Alvarado*, 541 U.S.

25   652, 665-66 (2004) (stating that "[r]elief is available under § 2254(d)(1) only if the state

26   court's decision is objectively unreasonable."). "A state court's determination that a claim

27   lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree on the

28   correctness of the state court's decision.'" *Harrington*, 2011 WL 148587, at * 11 (citing

1   *Yarborough*, 541 U.S. at 664).  "'[E]valuating whether a rule application was unreasonable

2   requires considering the rule's specificity.  The more general the rule, the more leeway courts

3   have in reaching outcomes in case-by-case determination.'" *Harrington*, 2011 WL 14587, at *

4   11 (citing *Yarborough*, 541 U.S. at 664).

5          The habeas court presumes that the state court's factual determinations are correct and

6   petitioner bears the burden of rebutting this presumption by clear and convincing evidence.

7   28 U.S.C. § 2254(e)(1) (stating that "a determination of factual issues made by a State court

8   shall be presumed to be correct.  The applicant shall have the burden of rebutting the

9   presumption of correctness by clear and convincing evidence."); *Williams v. Rhoades*, 354

10  F.3d 1101, 1106 (9th Cir. 2004).

11         Where a state court decision is deemed  "contrary to" or an "unreasonable application

12  of" clearly established federal law, the reviewing court must next determine whether it

13  resulted in constitutional error.  *Benn v. Lambert*, 283 F.3d 1040, 1052 n. 6 (9th Cir. 2002).

14  On habeas review, the court assesses the prejudicial impact of most constitutional errors by

15  determining whether they "had substantial and injurious effect or influence in determining the

16  jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United

17  States*, 328 U.S. 750, 776 (1946)); *see also Fry v. Pliler*, 551 U.S. 112 (2007) (*Brecht*

18  standard applies whether or not the state court recognized the error and reviewed it for

19  harmlessness).  The *Brecht* harmless error analysis also applies to habeas review of a

20  sentencing error.  The test is whether such error had a "substantial and injurious effect" on the

21  sentence.  *Calderon v. Coleman*, 525 U.S. 141, 145-57 (1998) (holding that for habeas relief

22  to be granted based on constitutional error in capital penalty phase, error must have had

23  substantial and injurious effect on the jury's verdict in the penalty phase.); *Hernandez v.

24  LaMarque*, 2006 WL 2411441 (N.D.Cal., Aug. 18, 2006) (finding that even if the evidence of

25  three of petitioner's prior convictions was insufficient, petitioner was not prejudiced by the

26  court's consideration of those convictions because the trial court found four other prior

27  convictions which would have supported petitioner's sentence.)  However, some

28  constitutional errors do not require that the petitioner demonstrate prejudice. *Musladin v.*

1  *Lamarque*, 555 F.3d 830, 834 (9ᵗʰ Cir. 2009) (citing *Arizona v. Fulminante*, 499 U.S. 279, 310

2  (1991); *United States v. Cronic*, 466 U.S. 648, 659 (1984)). The Court will review Petitioner's

3  claims under the applicable standard of review.

4      **B.  Ground One**

5          As previously stated, the only portion of Ground One that is under consideration in this

6  Report and Recommendation is Petitioner's assertion that counsel in CR2002-014160, Bruce

7  Blumberg, was ineffective for failing to appear at the change of plea hearing.  (Doc. 4 at 9-

8  12)⁵

9          In his petition for post-conviction relief, Petitioner argued the he was actually or

10 constructive denied the effective assistance of counsel in violation of the Sixth Amendment.

11 (Respondents' Exh. Y at 10)   Petitioner asserted several factual bases in support of his claim

12 that Mr. Blumberg was ineffective.  (Respondents' Exh. Y) Absent from the post-conviction

13 petition, however, is Petitioner's argument that Mr. Blumberg was ineffective based on his

14 failure to appear at the change of plea hearing - the claim Petitioner presents in his pending

15 Petition for Writ of Habeas Corpus.  (Respondents' Exh. Y; Doc. 4 at 9-12)  In other words,

16 Petitioner did not properly present the factual basis of the foregoing claim to the state courts

17 and did not exhaust that claim.

18         When seeking habeas relief, the burden is on the petitioner to show that he has properly

19 exhausted each claim. *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981) (*per curiam* ),

20 *cert. denied*, 455 U.S. 1023 (1982).  Exhaustion not a mere affirmative defense, wherein the

21 burden of proof lies on the Respondents.  To the contrary, when seeking habeas relief, the

22 burden is on the petitioner to show that he has properly exhausted each claim. *Cartwright v.*

23 *Cupp*, 650 F.2d at 1104 (9th Cir. 1981).  A failure-to-exhaust defense under 28 U.S.C. § 2254

24 _____

25         ⁵  Although Respondents' Answer addresses the allegation in Ground One with respect to
26 counsel in the 2003 case, it does not discuss Petitioner's remaining claim that defense counsel
   Blumberg was ineffective for failing to appear at the change of plea hearing.  (Doc. 21 at 33-36)
27 The Court will address this claim without requesting further briefing on this issue because
   Respondents' recent filings indicate that they are aware of this claim, *see* doc. 74, and they have
28 not requested leave to supplement their Answer to address this claim.

1  is not waived by failure to raise it. "A State shall not be deemed to have waived the

2  exhaustion requirement or be estopped from reliance upon the requirement unless the State,

3  through counsel, expressly waives the requirement." 28 U.S.C. § 2254(b)(3).[6]

4        Because Petitioner did not properly present his claim of ineffective assistance of

5  counsel claim based on Mr. Blumberg's failure to appear at the change of plea hearing, and he

6  may not return to state court to do so now, federal habeas review of Petitioner's is

7  procedurally barred. *See Anderson v. Harless,* 459 U.S. 4, 6-7 (1982); *Gray v. Netherland*,

8  518 U.S. 152, 162-63 (1996) (stating that "for purposes of exhausting state remedies, a claim

9  for relief in habeas corpus must include reference to a specific federal constitutional

10  guarantee, as well as a statement of the facts that entitle the petitioner to relief."); *Kelly v.*

11  *Small,* 315 F.3d 1063, 1067-69 (9th Cir. 2003) (finding unexhausted ineffective assistance of

12  counsel and prosecutorial misconduct claims where specific instances of ineffectiveness and

13  misconduct asserted in federal petition were neither in the California Supreme Court petition

14  nor discussed by the Court of Appeals), *overruled on other grounds, Robbins v. Carey*, 481

15  F.3d 1143 (9th Cir. 2007); *Gauf v. Ontiveres*, No. CV-06-804-PHX-DGC (JCG), 2007 WL

16  1713287, * 5 (D.Ariz. June 12, 2007) (noting that presentation of one set of operative facts in

17  support of a federal claim does not properly exhaust the same federal claim based on a

18  different set of facts).   Because Petitioner's claim that Bruce Blumberg rendered ineffective

19  assistance of counsel asserted in Ground One is procedurally defaulted, habeas corpus review

20  is not available absent a showing of cause and prejudice or a fundamental miscarriage of

21  justice.  Dismissal with prejudice of a procedurally barred or procedurally defaulted habeas

22  claim is generally proper absent "cause and  prejudice" or a "miscarriage of justice" which

23  would excuse the default.  *See Dretke v. Haley*, 541 U.S. 386, 393-94 (2004); *Reed v. Ross*,

24  468 U.S. 1, 11 (1984). Petitioner has not made a showing sufficient to overcome the

25  procedural bar.  (*see* Doc. 36)

26  _____

27      [6] Respondents' mere failure to address Petitioner's claim that Mr. Blumberg was ineffective
for failing to appear at the change of plea hearing, and to discuss exhaustion and procedural bar
28  with respect to that claim, does not waive such an argument. *See* 28 U.S.C. § 2254(b)(3).

1    Moreover, Petitioner's claim lacks merit.  Under 28 U. S. C. §2254(d), federal habeas

2   relief may not be granted with respect to any claim a state court has adjudicated on the merits

3   unless, among other exceptions, the state-court decision denying relief involves "an

4   unreasonable application" of "clearly established Federal law, as determined by" this Court.

5   The relevant federal law is the standard for ineffective assistance of counsel under *Strickland*

6   *v. Washington*, 466 U.S. 668 (1984), which requires a showing of "both deficient performance

7   by counsel and prejudice." *Knowles v. Mirzayance*, 556 U. S. ___, 129 S.Ct. 1411, 1420

8   (2009).

9    Under *Strickland*, the reversal of a conviction is required if counsel's errors were so

10  serious that counsel was deficient, and that counsel's "deficient performance prejudiced the

11  defense." *Strickland*, 466 U.S. at 687.  To be deficient, counsel's representation must have

12  fallen "below an objective standard of reasonableness," *Strickland*, 466 U. S. at 688, and there

13  is a "strong presumption" that counsel's representation is within the "wide range" of

14  reasonable professional assistance. *Id*. at 689; *see also Kimmelman v. Morrison*, 477 U.S.

15  365, 381 (1986) (quoting *Strickland*, 466 U.S. at 689).  Second, petitioner must establish that

16  he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable

17  probability that, but for counsel's unprofessional errors, the result of the proceeding would

18  have been different." *Id*. at 694. A reasonable probability is a probability sufficient to

19  undermine confidence in the outcome. *Id*.

20    "'Surmounting *Strickland's* high bar is never . . .  easy.'" *Harrington*, 2011 WL

21  148587, at * 13 (quoting *Padilla v. Kentucky*, __ U.S.___, 130 S.Ct. 1473, 1485 (2010)).

22  "The question is whether an attorney's representation amounted to incompetence under

23  'prevailing professional norms', not whether it deviated from best practices or most common

24  custom." *Harrington*, 2011 WL 148587, at * 13 (quoting *Strickland*, 466 U.S. at 690).

25  Establishing that a state court's application of *Strickland* was unreasonable under §2254(d) is

26  even more difficult, because both standards are "highly deferential," 466 U. S. at 689, and

27  because *Strickland's* general standard has a substantial range of reasonable applications.  The

28  issue under §2254(d) is not whether counsel's actions were reasonable, but whether there is

1   any reasonable argument that counsel satisfied *Strickland's* deferential standard. *Harrington*

2   *v. Richter*, ___ U.S., ___ , 2011 WL 148587, at * 13 (January 19, 2011).

3          Petitioner contends that defense counsel in the 2002 case, Bruce Blumberg, was

4   ineffective for failing to appear at the change of plea hearing.   (Doc. 4 at 11)  Although Mr.

5   Blumberg did not appear at the change of plea hearing, counsel in Petitioner's related 2003

6   case, Shelly Davis, appeared on Petitioner's behalf.  At the outset of the hearing, Ms. Davis

7   identified herself as counsel for Petitioner in the 2003 case and stated that "I am appearing for

8   Bruce Blumberg in the 2002 case."  (Respondents' Exh. P at 3)  The Court addressed Ms.

9   Davis as counsel with respect to both cases.  (Respondents' Exh. P)  Petitioner did not raise

10  any inquiries or objections regarding Mr. Blumberg's absence.  (*Id*.)  This is not a case where

11  Petitioner was left without counsel.  This case is unlike *Delgado v. Lewis*, 223 F.3d 976 (9th

12  Cir. 2000), where the Ninth Circuit concluded Delgado received ineffective assistance of

13  counsel when his appointed counsel failed to appear at the preliminary hearing, sentencing

14  hearing, or signing of the change of plea agreement.  Rather in *Delgado*, an attorney for one

15  of Delgado's co-defendants, who "was asked [at the sentencing hearing] to represent Delgado

16  without any prior notice . . . merely left Delgado's fate to the mercy of the court and presented

17  no mitigating evidence[,]" and "Delgado received the maximum sentence allowable despite

18  having no prior criminal record[,]" which "far exceeded [the sentences] of his co-defendants

19  whose counsel made presentations on their behalf." *Id*. at 978, 980-82.

20         Unlike *Delgado*, Mr. Blumberg did not abandon Petitioner.  Rather, he arranged for

21  Ms. Davis, Petitioner's counsel in the related 2003 case, to represent Petitioner during the

22  change of plea hearing on both the 2003 and 2002 cases.  Mr. Blumberg then appeared on

23  Petitioner's behalf at the sentencing hearing.   Petitioner was represented by counsel during

24  the change of plea hearing. *See Miranda v. Horel*, 2009 WL 2578920, at * 9 (C.D.Cal., Aug.

25  18, 2009) (rejecting claim of ineffective assistance based on petitioner's allegation that he had

26  no defense counsel present at guilty plea when retained counsel's associate appeared on

27  petitioner's behalf.). *See also Rocha v. United States*, 986 F.2d 1422, 1993 WL 57479, *1 (6th

28  Cir. 1993) (unpublished) (finding that defendant was not denied effective assistance of

1  counsel when retained attorney sent less experienced associate to try case and "did not point

2  to any error by [associate] that satisfies the *Strickland* standard."), *cert. denied*, 510 U.S. 844

3  (1993).[7]   In view of the foregoing, Petitioner is not entitled to relief on his claim that Mr.

4  Blumberg was ineffective in the 2002 case for failing to appear at the change of plea hearing.

5  **C.  Ground Nine - *Blakely* Claim**

6  In Ground Nine, Petitioner argues that his "sentence" violates the Sixth Amendment as

7  construed in *Blakely v. Washington*, 542 U.S. 296 (2004), because a judge, not a jury,

8  determined "the elements beyond a reasonable doubt" and he did not waive his Sixth

9  Amendment right to a jury determination of aggravating factors.  (Doc. 1 at 26-32)  Although

10  Petitioner does not specify which of his cases allegedly violated *Blakely*, this claim logically

11  pertains to his sentence imposed in CR2003-021342 because sentencing was suspended in

12  CR2002-014160 and Petitioner was placed on probation.  (Respondents' Exhs. N, R)

13  Although not raised by the parties, the Court considers *sua sponte* whether it retains

14  jurisdiction over this claim in view of Petitioner's completion of his entire sentence in

15  CR2003-021342.  (Doc. 66, Exh. 1)  *See Demery v. Arpaio*, 378 F.3d 1020, 1025 (9th Cir.

16  2004) (citing *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir.1999) (stating that federal

17  courts "have an independent duty to consider *sua sponte* whether a case is moot."); *Mafnas v.*

18  *Superior Court*, 936 F.2d 1068, 1071 (9th Cir. 1991) (mootness is an element of

19  justiciability).

20  Petitioner claims that he did not waive his right to have aggravating factors determined

21  by a jury and that the court's determination of aggravating factors violated his Sixth

22  Amendment rights.  (Doc. 4 at 35)   For the same reasons set forth in the January 14, 2011

23  Report and Recommendation, Petitioner's claim attacking his sentence in CR2003-021342 is

24

25  ———————————

26  [7]   Although Petitioner asserts that Ms. Davis was ineffective with respect to her advice regarding the 2003 case, a point which Respondents' concede (*see* Doc. 75), Petitioner has not

27  shown that Ms. Davis was ineffective with respect to the 2002 case.  As set forth in the January 14, 2011 Report and Recommendation, Petitioner's ineffective assistance claim regarding his

28  sentence in the 2003 case is moot.  (Doc. 76)

1  moot, because Petitioner has completed his sentence.  (Doc. 66, Exh. 1; Doc. 76)  In *Carafas*

2  *v. LaVallee*, the Supreme Court held that a petitioner's challenge of his conviction is not

3  rendered moot by the fact that the underlying sentence has expired because certain collateral

4  consequences flowing from the conviction give the petitioner "a substantial stake in the

5  judgment of conviction which survives the satisfaction of the sentence imposed on him." 391

6  U.S. 234, 237 (1968). However, in *Lane v. Williams*, 455 U.S. 624, 631 (1982), the Court

7  clarified that the *Carafas* rule does not apply when the petitioner purports to challenge his

8  sentence and the sentence has been fully served. Because Petitioner has been unconditionally

9  discharged from custody after having completed his sentence, his habeas claim attacking his

10  sentence in the 2003 case is moot.[8]

11       To the extent that Ground Nine can be construed as claiming that the trial court's

12  imposition of consecutive sentences in the 2003 and 2002 cases violated his Sixth

13  Amendment right to a jury as set forth in *Blakely v. Washington*, 542 U.S. 296 (2004), his

14  claim lacks merit.  In *Blakely*, the United States Supreme Court re-affirmed its holding In

15  *Apprendi v. New Jersey*, 530 U.S. 466 (2000), that other than the fact of a prior conviction,

16  any fact not admitted by defendant that increases the penalty for a crime beyond the

17

18

---

19      [8]  Moreover, even if Petitioner's *Blakely* claim were not moot, his claim lacks merit.  In

20  *Blakely*, the United States Supreme Court re-affirmed its holding In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), that other than the fact of a prior conviction, any fact not admitted by defendant that increases the penalty for a crime beyond the prescribed statutory maximum must

21  be submitted to a jury and proved beyond a reasonable doubt. *Blakely,* 542 U.S. at 301.  Here, the court found the following aggravating factors: the fact that the offense was committed while

22  on release; the nature of the offense - a crime committed against a victim of a pending case.

23  (Respondents' Exh. Q at 21)  The court noted that Petitioner admitted both of these aggravating factors in the plea agreement. (*Id.*)  The record reflects that Petitioner admitted during the

24  change of plea hearing that he committed the offense in the 2003 case against a victim of a

25  pending case.  (Respondents' Exh. P at 17-18) This admission was sufficient to permit the imposition of an aggravated sentence.  *See Stokes v. Schriro*, 465 F.3d 397, 402-03 (9th Cir.

26  2006); *Jones v. Schriro*, No. CV-05-3720-PHX-JAT (DKD), 2006 WL 1794765, * 2-3 (D.Ariz., June 27, 2006) (stating that "once a jury finds or a defendant admits a single aggravating factor,

27  the Sixth Amendment permits the sentencing judge to find and consider additional factors

28  relevant to the imposition of a sentence up to the maximum prescribed in that statute.").

1   prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable

2   doubt. *Blakely,* 542 U.S. at 301, *Apprendi,* 530 U.S. at 490; *see also Cunningham v.*

3   *California*, 549 U.S. 270, 274 (2007) (re-affirming *Apprendi* rule).

4            To the extent Petitioner challenges his consecutive sentences in the 2003 and 2002

5   cases, his claim is foreclosed by the United States Supreme Court's decision in *Oregon v. Ice*,

6   550 U.S. 160, 129 S.Ct. 711 (2009).   In *Ice*, the United States Supreme Court held that the

7   Sixth Amendment right to a jury trial does not attach to the decision to impose consecutive

8   sentences. *Id*. at 714-19 (upholding the constitutionality of an Oregon statute assigning to

9   judges rather than juries the duty to make findings of fact necessary to impose consecutive

10  sentences for multiple offenses). The Supreme Court explained that the decision to impose

11  consecutive sentences was not historically a jury function, and the principles set forth in

12  *Apprendi*, *Blakely*, and *Cunningham* do not apply. *Id*. at 717-19. "Thus, a defendant convicted

13  of multiple offenses is not entitled to a jury determination of facts necessary to impose

14  consecutive rather than concurrent sentences." *Hernandez v. McDonald*, 2010 WL 1408301

15  (C.D.Cal., March 3, 2010) (citing *Ice,* 129 S.Ct. at 714-15) (finding that state court's

16  determination that "*Cunningham* did not address the constitutionality of a trial court's

17  decision to impose consecutive sentences" and *Blakely* "does not apply to consecutive

18  sentencing," was consistent with clearly established federal law, and denying federal habeas

19  relief on challenge to consecutive sentences.).

20           In view the Supreme Court's decision in *Ice*, to the extent that Petitioner challenges his

21  consecutive sentences imposed in the 2003 and 2002 cases under the Sixth Amendment law

22  articulated in *Blakely*, *Apprendi*, and *Cunningham*, his claim lacks merit and does not entitle

23  him to habeas corpus relief.

24  **V.  Conclusion**

25           Based on the foregoing, the Petition should be denied and dismissed because

26  Petitioner's claims are either procedurally barred from federal habeas corpus review or lack

27  merit.

28           Accordingly,

- 37 -

1    **IT IS HEREBY RECOMMENDED** that Petitioner's Petition for Writ of Habeas
2    Corpus, doc. 1, be **DENIED.**

3    **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to
4    proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is
5    justified by a plain procedural bar and jurists of reason would not find the procedural ruling
6    debatable and because Petitioner has not made a substantial showing of the denial of a
7    constitutional right.

8    This recommendation is not an order that is immediately appealable to the Ninth
9    Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of
10   Appellate Procedure, should not be filed until entry of the District Court's judgment.  The
11   parties shall have (14) fourteen days from the date of service of a copy of this
12   recommendation within which to file specific written objections with the Court.  *See,* 28
13   U.S.C. § 636(b)(1); Rules 72, 6, Federal Rules of Civil Procedure.  Thereafter, the parties
14   have (14) fourteen days within which to file a response to the objections.  Failure timely to
15   file objections to the Magistrate Judge's Report and Recommendation may result in the
16   acceptance of the Report and Recommendation by the District Court without further review.
17   *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure timely to file
18   objections to any factual determinations of the Magistrate Judge may be considered a waiver
19   of a party's right to appellate review of the findings of fact in an order or judgment entered
20   pursuant to the Magistrate Judge's recommendation. *See,* Rule 72, Federal Rules of Civil
21   Procedure.

22   DATED this 24th day of January, 2011.

23

24

25   Lawrence O. Anderson
     United States Magistrate Judge

26

27

28

- 38 -