

Carlos Adrian Morley
1103 South Farmer #8
Tempe, Arizona 85281

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

Carlos Adrian Morley,
    Petitioner,

v.

Yolanda Elliot, et al.,
Respondent.

CV-09-1554-PHX-NVW (LOA)
Pursuant to 28 U.S.C. §§144 & 28 U.S.C. §§455
as well as RULE 25 AND U.S.C. §§ 8093

## PETITION FOR RECUSAL
## OF MAGISTRATE JUDGE

Hon. NEIL V. WAKE

COMES NOW HERE, Petitioner Carlos Adrian Morley in the most humble capacity of a Pro Pria Persona litigant who is praying for LIBERAL CONSTRUING under HAINES v KERNER 96 S. Ct. 594 (1972); BOAG v. McDOUGALL 454 U. S. 364 (1982); U. S. v SEESING 234 F. 2d 456 (CA.9 2000); & HOHN v U. S. 262 F.3d 811 (CA 8 2001) and not hold the Petitioner to the stringent standards as a licensed bar certified United States District Court Appointed Attorney as he lacks the judicial training and has limited skills for which to express the intricacies of this case at bar.

Pursuant to 28 U.S.C. §§144 & 28 U.S.C. §§455 (b) requires Mandatory Disqualification or Recusal where BIAS exist as a result of a family member being affected by the outcome of a possible reversal of the convictions at bar, specifically CR2002-014160 & CR2003-021342-001-DT.

Petitioner Morley will demonstrate through the record as well as the evidence that the Magistrate Judge Lawrence O. Anderson should disqualify himself as well as his January 14, 2011 (document #76) REPORT AND RECOMMENDATION as well as (document #79) REPORT AND RECOMMENDATION which was filed less than two weeks later and the January 14,2011 (document #77) ORDER which calls for vacating the January 21,2011 evidentiary hearing, which also denies Petitioner Morley a continuance for the purposes of a much needed conference with his attorney of record David Eisenberg who is acting on his own asking for a reduction in sentence instead of asking for a withdrawal of the plea contracts as they are invalid as well as Constitutionally void. This Petition in coordination with 28 U.S.C. §§144 & 28 U.S.C. §§455 (b)  provides an opportunity to avoid the appearance of impropriety by removing Magistrate Judge Anderson in any capacity of making legal opininions, or making recommendations which could affect the outcome of this case at bar. The attached exhibits demonstrate the impossibility of the fair and impartial involvement by this Magistrate Judge Lawrence O. Anderson.

Judge Anderson should have recused himself as his family member HON. AIMEE L. ANDERSON made pertinent presidings in this case during pre-conviction, which could come under scrutiny in the probable event that these convictions become overturned. Identified as exhibit (A) is the attached copy of IPTC Initial Pre Trial Conference dated 5/20/2004 by HON. AIMEE L. ANDERSON as presiding Superior Court Judge.

Petitioner Morley has raised numerous claims against his Attorney of record, Bruce E. Blumberg, citing Ineffective Assistance Of Counsel how the petitioner should have never been advised to enter a Criminal Plea Agreement in a matter for an Equity Court, and that his attorney of record should have Challenged Venue as well as Subject Matter Jurisdiction.

This INITIAL PRETRIAL CONFERENCE document is evidence of not only the appearance of impropriety but proves the CR 2003-021342-001 DT is scheduled first for trial and the CR2002-014160 is slated to go second which means it cannot be considered as a Prior Felony Conviction for sentencing enhancement for the CR 2003-021342-001 DT case at bar. This document also prover that Petitioner Morley was in fact blindsided with the news of using a prior Felony Conviction since the even the HON AMEE ANDERSON was not either aware.

Petitioner Morley also cites numerous due process violations and this document also proves Bruce E. Blumberg deliberate indifference to keep court room appearances for his client after taking his last thirty thousand ($30,000.oo). Here he has waived his appearance for Petitioner Morley as he also failed to appear at the Arraignment in front of the Hon. Benjamin Vatz on 10-2-03 and also failed to appear at Petitioner Morley's July 2, 2004 trial.

This INITIAL PRETRIAL CONFERENCE document is evidence that Bruce E. Blumberg by waiving his appearance forfeited yet another opportunity to move this from a criminal Court to an equity court where it did in fact belong. Many things were decided which violated Petitioner Morley's USCA 6th as well as his USCA 14th which guarantees due process, legal representation, so it could appear that the Magistrate Judge Lawrence O. Anderson should disqualify himself. It was as if the Magistrate Judge Lawrence O. Anderson himself was in fact the Judge that day.

Also attached and Identified as exhibit (B) Transcript of the October 6th 2010 Hearing to remove Attorney Joy Bertrand as counsel for the Petitioner Morley. Petitioner Morley first took possession of this Court Reporters Transcript on Friday, January 21, 2011 as it was a sealed document not available to the Petitioner any earlier.

On page 3 line 13-15 of this Oct. 6th 2010 Reporters Transcript Petitioner is prevented from speaking, "Okay. Lets not get lost in the minutia." as well as on page 11 line 2. Then stopped from speaking again on line 5 and then on line 12 and line 18 the Magestrate Judge gets quite loud and alludes to accusing Petitioner Morley as being a Racist all this happens on the same page 11.

Then on page 12 Magistrate Judge Anderson line 9 accusing Petitioner Morley of being a "difficult client." All of the nine issues which Petitioner Morley presented in his Petition for a Writ Of Habeas Corpus were all exhausted in every step of the lower courts, so on page 13 line 21 is an example of how the Magistrate Judge Anderson makes a claim that is not accurate.

On page 14 Judge Anderson shows a deliberate indifference to Petitioner Morley's problems with Joy Bertrand as if Mr. Morley should expect to lose the issues through any procedural default of Attorney Joy Bertrand. Then again on page 15 line 7-8 the Magestrate Judge labels "Mr. Morley is a difficult, challenging client"

The purpose for this hearing was to shed light on the problems Petitioner Morley is having with his Attorney, so why does the Magistrate Judge Anderson say on page 15 line 16 "Tell me here in open court. What are your problems that you have had with Mr. Morley, either in communications or dealing with him?"

This Magistrate Judge doesn't get rough with Joy Bertrand when he finds out she refuses to do her job or even communicate with Mr. Morley. The Magistrate Judge Anderson chooses to use the hearing to reprimand Petitioner Morley, instead of reprimanding Joy Bertrand. The Magistrate Judge Anderson totally ignores the 4th legal professional capacity opinion this one by Joy Bertrand's observations of Mr. Morley's Capacity issues Page 16 lines 2-23, (lines 6-7) "Mr.

Morley – I think is still struggling with some capacity issues." Also (lines 17-18) "I have seen

my difficulties with Mr. Morley more towards clinical issue than a personality issue."

Please also turn to page 20 (lines 4-5) of exhibit (B) the Oct. 6th 2010 Reporters

Transcript the Magistrate Judge Anderson is disappointed in Petitioner Morley as he is again on

lines16-19 scolding Petitioner Morley and threatening Petitioner Morley with refusing to provide

Petitioner Morley with a third lawyer even if the assistance of the newly appointed lawyer is also

ineffective. Still on page 20 (lines 21-25) Magistrate Judge Anderson is suggesting Petitioner

Morley will be "He's impossible" or that Petitioner will ask the new lawyer to violate ethics

RULES. See also the final page 21 of this Court Reporters Transcript (lines 1-7) Magistrate

Judge Anderson suggests that Petitioner Morley would ask the new attorney to make not

exhausted claims to the United States District Court and continues the threats (line 4) "There

won't be a third lawyer" As well as line's 6-7; "You will be representing yourself. Do you

understand that?"Turney v Ohio, 273 U.S.510,522(1927)(general rule that officers acting in

judicial or quasi-judicial capacity are disqualified by their interest in the controversy to be

decided) 28 U.S.C. §§144 (district court judge shall be disqualified if party to district court

proceedings files a timely and sufficient affidavit showing personal judicial bias or prejudice) 28

U.S.C. §§455 (a) (any justice, judge, or magistrate shall himself or herself in any proceeding if

impartiality might reasonably be questioned);   28 U.S.C. §§455 (b)( any justice, judge, or

magistrate shall himself or herself in circumstances creating actual bias or personal knowledge of

the proceeding) 294 F.3d 1075, 1082-83 (9th Cir. 2002)(recusal required because Judge failed to

ask another judge to preside over a contempt charge predicated on alleged personal attack on

judge, and judge's behavior showed bias and "personal embroilment") 368 F 3d709,718 (7th Cir.

2004)(motion to recuse under §455 requires only reasonable appearance of bias, whereas motion

to disqualify under §144 requires showing of actual bias) <u>U.S.v Microsoft Corp.</u> ,253 F.3d 34,

114 (D.C.Cir. 2001)(disqualification of judge under §144 requires filing affidavit while case is in

district court whereas §455 does not).*In re* U.S., 158 F 3d 26, 30 (1st Cir. 1998)(if question of

whether §455(a) requires disqualification is close, balance tips in favor of recusal); <u>Republic of</u>

<u>Pan. v. Am. Tobacco Co.,</u> 217 F.3d343,347(5th Cir.2000)(if question of whether §455(a) requires

disqualification is close, balance tips in favor of recusal); *rev'd on other grounds sub nom.* <u>Sao</u>

<u>Paolo v. Am. Tobacco Co.,</u>535 U.S. 229 (2002); U.S.v.Dandy, 998 f. 2d 1344, 1349 (6th Cir.

1993)(if question of whether §455(a) requires disqualification is close, balance tips in favor of

recusal);U.S.v. Holland,519 F.3d 909,912 (9th Cir.2008) (if question of whether §455(a) requires

disqualification is close, balance tips in favor of recusal); Nichols v. Alley, 71 F.3d 347, 352

(10th Cir. 1995) (if question of whether §455(a) requires disqualification is close, balance tips in

favor of recusal); U.S. v. Patti, 337 F3d 1317,1321(11th Cir.2003) (if question of whether

§455(a) requires disqualification is close, balance tips in favor of recusal);

Magistrate Judge Lawrence O. Anderson filed his January 14, 2011 (document #76)

REPORT AND RECOMMENDATION and within a couple of weeks (document #79) REPORT

AND RECOMMENDATION are both based in part upon receiving the states (document #75)

RESPONDENTS BRIEFING IN ACCORDANCE WITH THE COURT'S ORDER OF JULY 7,

2010 Magistrate Judge Lawrence O. Anderson in direct conflict with all his previous documents

took a total 180 degree about face and Granted a Motion which was already reversed by the State

in (document #75) which is attached to this pleading and identified as EXHIBIT C.

The arguments formulated by a ROUGE defense attorney acting SUA SPONTE along

with the states argument against these ridiculous claims made by this attorney David Eisenberg.

The United States District Court appointed Attorney never responded to the Petitioner Morley's

8 full pages of emails then filed a ridiculous document on December 30, 2010 He also said he would file for the court's permission to expand the argument but did not. Due process would require Magistrate Judge Lawrence O. Anderson to have a hearing on the Matter of Attorney David Eisenberg Filing a document without the knowledge or approval of his client as well as a hearing to determine the nature of Petitioner Morley to ask Attorney David Eisenberg to step down as his Attorney. in direct conflict with all his

Petitioner Morley filed a Motion to Continue asking the courts to consider the facts that David Eisenberg was acting SUA SPONTE and informed the courts petitioner Morley would be asking his attorney to withdraw as Petitioners counsel because he would refused to argue for overturning the convictions and never answered any the eight pages of emails which included challenging both Grand Jury Transcripts as well as the numerous claims against his Attorney of record, Bruce E. Blumberg, citing Ineffective Assistance Of Counsel which prejudiced the outcome of Petitioner Morley's case.

# CONCLUSION

Petitioner Morley prays that this court will re-appoint a new Magistrate Judge, stricken from the record all the (document #76) REPORT AND RECOMMENDATION and within a couple of weeks (document #79) REPORT AND RECOMMENDATION as well as any order to vacate the much needed Evidentiary hearing. Perhaps the most efficient way to remedy this situation is to grant the WRIT FOR A PETITION FOR A HABEAS CORPUS since the state has conceded in (document #75) RESPONDENTS BRIEFING IN ACCORDANCE WITH THE COURT'S ORDER OF JULY 7,

RESPECTFULLY SUBMITTED this 1st day of March 2011 by Carlos Adrian Morley *Carlos A. Morley*

# CERTIFICATE OF SERVICE

I do here by certify that on this 1st day of March 2011 I did hand deliver in person to the

parties listed below


ADRIANNA M. ROSENBLUM
ASSISTANT ATTORNEY GENERAL
CRIMINAL APPEALS/CAPITAL
LITIGATION SECTION
1275 W. Washington
Phoenix, Arizona 85007-2997


Carlos Adrian Morley
1103 South Farmer #8
Tempe Arizona 85281


RESPECTFULLY SUBMITTED
THIS 1st day of March 2011
by Carlos Adrian Morley

Carlos Adrian Morley
1103 South Farmer #8
Tempe, Arizona 85281

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

Carlos Adrian Morley,
Petitioner,

CV-09-1554-PHX-NVW (LOA)
Pursuant to U.S.C.§2:64&
RULE25

V.

SWORN AFFIDAVIT IN SUPPORT OF

DISQUALIFICATION OR RECUSAL OF

MAGISTRATE JUDGE

Yolanda Elliot, et al.,
Respondent.

Attention to Presiding   Hon. NEIL V. WAKE

I Carlos Adrian Morley, being first duely sworn upon this oath states under the severe penalty of perjury that:

(1) I am the affiant herein, and the above Petitioner is Prejudiced by all Reports and Recommendations opinions ORDERS as well as findings.

(2) I have read all of the statements contained in the foregoing petition.I Carlos Adrian Morley as the Affiant have personal  knowledge of the facts as set forth in this Affidavit as well as the MOTION FOR RECUSAL FOR MAGISTRATE JUDGE.This Affidavit is submitted in support of Plaintiff's attached pleading

(3) United States District Court Magestrate Judge Lawrence O. Anderson cannot provide a fair and impartial hearing or participate in any final judgement or ruling before this

District of Arizona United States District Court, in all the Issues set forth in his Petition for a Writ for a Habeas Corpus.

I am requesting the recusal of the United States District Court Magestrate Judge Lawrence O. Anderson based upon my own personal knowledge to the matters stated therin, hereby states the same is true and correct. This document serves to make the entire petition for recusal in its entirety an official AFFIDAVIT, making all rules of Court Federal as well as the United States District Court applicable.

Subscribed And Sworn, Affirmed To
Before Me This 1st day of March 2011


By: _____ Carlos Adrian Morley


_____02-03-2014_____ My commission Expires

NOAH BURKES
NOTARY PUBLIC -- ARIZONA
MARICOPA COUNTY
My Commission Expires
February 3, 2014


_____ Notary Public

# EXHIBIT A

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CR 2002-014160

05/20/2004


HON. AIMEE L. ANDERSON

CLERK OF THE COURT
A. Aguirre
Deputy

FILED: 05/26/2004

STATE OF ARIZONA

MARY L HARRISS

v.

CARLOS ADRIAN MORLEY

BRUCE E BLUMBERG

JUDGE SCHNEIDER
VICTIM SERVICES DIV-CA-CCC


INITIAL PRETRIAL CONFERENCE


Due to computer system malfunctions, the Court is unable to record the proceedings at this time. Defendant and respective counsel advise the Court that they wish to proceed with the Initial Pretrial Conference, and will waive their appearance for the purpose of putting matters on the record at a later time.

Later:

State's Attorney:            Appearance Waived
Defendant's Attorney:        Appearance Waived
Defendant:                   Appearance Waived

A record of the proceedings is made by CD/videotape in lieu of a court reporter.

The Court has conducted an initial pretrial conference (IPTC) this date.

IT IS ORDERED as follows:

A Final Trial Management Conference is set for 8/24/2004 at 8:30 a.m. before Judge Schneider.

Jury Trial is set for 8/26/2004 at 9:30 a.m. before Judge Schneider.

Docket Code 194                  Form R194                          Page 1

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CR 2002-014160                                                    05/20/2004

Estimated length of trial: 8 days

Last Day: 9/27/2004 (0 DAYS EXCLUDED)

The trials for this Defendant shall proceed in the following order:

CR2003-021342-001 DT, first;
CR2002-014160, Second.

IT IS FURTHER ORDERED affirming the Settlement Conference on 6/11/2004 at 11:00 a.m. before Judge Reinstein.

A DEFENDANT'S FAILURE TO APPEAR AT THE FINAL TRIAL MANAGEMENT CONFERENCE OR THE TRIAL MAY RESULT IN A BENCH WARRANT BEING ISSUED FOR HIS OR HER ARREST AND THE FTMC AND TRIAL BEING CONDUCTED IN THE DEFENDANT'S ABSENCE.

THE TRIAL DATE SHALL NOT BE CONTINUED UNLESS A WRITTEN MOTION TO CONTINUE IS FILED AT LEAST 5 DAYS BEFORE THE TRIAL. A CONTINUANCE WILL NOT BE GRANTED UNLESS THE MOTION SHOWS THAT EXTRAORDINARY CIRCUMSTANCES EXIST. (Rule 8.5, Rules of Criminal Procedure and guidelines thereto.)

FINAL TRIAL MANAGEMENT CONFERENCE

The purpose of the Final Trial Management Conference (FTMC) is (1) to complete final preparations for trial, and (2) to resolve pending pretrial issues, including possible settlement of the case.

IT IS ORDERED THAT COUNSEL WHO WILL TRY THE CASE AND THE DEFENDANT(S) SHALL PERSONALLY ATTEND THE CONFERENCE. VICTIMS SHALL BE NOTIFIED OF THE CONFERENCE.

JOINT PRETRIAL STATEMENT

Counsel shall meet and confer prior to the FTMC and jointly prepare a Joint Pretrial Statement (JPTS) using the approved form. The JPTS form is to be provided to the trial Judge prior to the FTMC.

The approved JPTS form is provided to counsel at this IPTC.

IT IS FURTHER ORDERED affirming prior custody orders.

Docket Code 194                     Form R194                          Page 2

EXHIBIT B

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

—————————

| | |
|---|---|
| Carlos Adrian Morely, | ) |
| | ) |
| Plaintiff, | ) **SEALED** |
| | ) **CV09-1554-PHX-NVW(LOA)** |
| vs. | ) Phoenix, Arizona |
| | ) October 6, 2010 |
| Yolanda Elliot, et al, | ) 3:40 p.m. |
| | ) |
| Defendant. | ) |
| | ) |

—————————————————

BEFORE:   THE HONORABLE LAWRENCE O. ANDERSON, MAGISTRATE JUDGE

TRANSCRIPT OF PROCEEDINGS

MOTION HEARING

APPEARANCES:

For the Petitioner Carlos Adrian Morley:
         JOY BERTRAND ESQ., LLC.
         By:  Joy Malby Bertrand, Esq.
         P.O. Box 2734
         Scottsdale, AZ  85252-2734

ALSO PRESENT:  Paralegal Jameson Johnson

Transcriptionist:
Elizabeth A. Lemke
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, SPC. 34
Phoenix, Arizona  85003-2150
(602) 322-7247

Proceedings Recorded by Electronic Sound Recording
Transcript Produced by Transcriptionist

<u>P R O C E E D I N G S</u>

(Called to the order of court at 3:40 p.m.)

THE COURT: Now, Mr. Morley, Sherise, our clerk, is going to lock the courtroom so no one can come in.

CARLOS ADRIAN MORLEY: Okay.

THE COURT: Mr. Morley, you filed a motion in which you've titled it Motion to Remove Counsel and Appoint New Counsel.

We need to have an understanding from the beginning. You can represent yourself at any time in this litigation, Mr. Morley.

CARLOS ADRIAN MORLEY: Yes.

THE COURT: But you cannot pick and choose who your lawyer is. Do you understand that?

CARLOS ADRIAN MORLEY: Yes.

THE COURT: Okay. Now, Mr. Morley, I have read your motion, and I think it was appropriate for me to appoint a lawyer for you, and Ms. Bertrand has been appointed to represent you in this case.

And although I have not seen any bill yet, I'm sure she's spent a lot of time on this case, as well as her paralegal Mr. Johnson at her direction.

Is that a fair assessment, Ms. Bertrand?

MS. BERTRAND: Yes, sir.

THE COURT: Okay. Now, and maybe before I start

1   asking questions, Mr. Morley, maybe you could stand either

2   there or at the podium and tell me all the reasons why you

3   want a new lawyer.

4              CARLOS ADRIAN MORLEY:  All right.  I will do that.  I

5   will go to the podium.

6              THE COURT:  I don't mind you standing there as long

7   as you're close to a microphone.  That's the main thing.

8              CARLOS ADRIAN MORLEY:  All right.  Does this work?

9              THE COURT:  That's fine.

10             CARLOS ADRIAN MORLEY:  All right then.  To begin

11  with, the day -- if you read my motion, it says in here that I

12  happened to go by the court -- the U.S. District Court

13  building on the 15th, I believe, to find out that I had --

14  that --

15             THE COURT:  Okay.  Let's not get lost in the minutia.

16             CARLOS ADRIAN MORLEY:  Yes.

17             THE COURT:  Okay?  I don't want to get lost here in

18  the details.

19             CARLOS ADRIAN MORLEY:  Okay.

20             THE COURT:  All right.  What's the problem?  That she

21  uses a paralegal?

22             CARLOS ADRIAN MORLEY:  No.  The problem is their --

23  well, for one thing, that's the first I have ever heard of him

24  being referred to as a paralegal.  The first time.  All along

25  I believed he was my attorney.  In fact, if you look at

UNITED STATES DISTRICT COURT

1    Exhibit A of the motion to remove him as counsel, I made an

2    enlarged picture of his business card and it says Southwest

3    Litigation Support, LLC.

4              Now, to me that means -- doesn't mean paralegal.

5    That means quite a bit higher that I -- and there is no

6    disclaimer there that says that he's a paralegal.  So I

7    assumed immediately that he was a lawyer.  So at the time we

8    were having our meeting at the Starbucks coffee shop which I

9    alluded to in my motion --

10             THE COURT:  Right.

11             CARLOS ADRIAN MORLEY:  -- I believed -- I would never

12   have agreed to tell him or be cross-examined by him.

13             THE COURT:  Okay.  All right.  Let me ask you just to

14   relax and settle down.

15             CARLOS ADRIAN MORLEY:  Okay.  I'm sorry.

16             THE COURT:  Okay?  The issue of privilege is

17   controlled by state law here in federal court.

18             CARLOS ADRIAN MORLEY:  Yes.

19             THE COURT:  Take a look at Rule 507 of the Federal

20   Rules of Evidence.  Okay?

21             CARLOS ADRIAN MORLEY:  Yes.

22             THE COURT:  A paralegal working for Ms. Bertrand is

23   covered by the attorney-client privilege.  So everything that

24   you were to say to the paralegal in the context of trying --

25   him trying to assist you --

1            CARLOS ADRIAN MORLEY:  Yes.

2            THE COURT:  -- at a lesser rate than having

3 Ms. Bertrand do all of the legwork is protected by the

4 attorney-client privilege.  And I suspected, Mr. Morley, that

5 you wanted some proof of that, so I have got a couple of cases

6 here that I printed off that you are free to read in your

7 leisure, but I'm going to make a record here.

8            This is -- the first case is an Arizona case.  It's

9 called *Roman Catholic Diocese of Phoenix v. Superior Court*.

10 That's found at 62 P.3d 970.  62 P.3d 970.  It's a 2003 case.

11            CARLOS ADRIAN MORLEY:  Yes.

12            THE COURT:  And the Arizona Court of Appeals referred

13 to in a footnote -- and let me find it here.  It's discussing

14 an amendment to the statute that they have in Arizona that

15 extends the attorney-client privilege to attorneys and it says

16 here and I'm quoting:

17            "The legislation defined the privilege differently,

18 extended it to entities other than corporations, and expressly

19 applied it to an attorney's paralegals and assistants."

20            Okay?

21            CARLOS ADRIAN MORLEY:  Yes.

22            THE COURT:  So I think part of your problem is you're

23 assuming that the attorney-client privilege does not apply to

24 Mr. Johnson.  It does.  All right.  So can we move past that?

25            CARLOS ADRIAN MORLEY:  Well, I just wasn't aware of

1    any oath of office that he took or any type of thing like that

2    as far as -- and I didn't even know -- the first time I was --

3    ever heard of him being referred to as a paralegal was after I

4    filed these documents.

5        THE COURT:  All right.  Now, the name of his LLC

6    doesn't tell me anything except he does business by way of a

7    professional legal corporation.  It doesn't tell me he's a

8    lawyer, a paralegal, or anything.  You would have to ask him

9    that.

10        Did you ever ask him if he was a lawyer?

11        CARLOS ADRIAN MORLEY:  No.  I didn't want -- I

12    assumed that since he was cross-examining me and quoting me

13    case law from federal case law, and I knew he was being paid

14    somehow, that I put it all together that he was obviously a

15    lawyer.

16        THE COURT:  All right.  You may have taken it as

17    cross-examining you.  I'm sure he was asking you pointed

18    questions to get answers to try to help him help you in your

19    case.

20        Let me ask you to just hold on one second.  Let's hit

21    the pause button, Mr. Morley.

22        CARLOS ADRIAN MORLEY:  Yes.

23        THE COURT:  Mr. Johnson, are you a licensed paralegal

24    in the State of Arizona, sir?

25        JAMESON JOHNSON:  To the best of my knowledge,

UNITED STATES DISTRICT COURT

1    paralegals are actually not licensed by the Arizona bar.

2         THE COURT:  Okay.

3         JAMESON JOHNSON:  In every --

4         THE COURT:  Would you stand up when you address the

5    Court, please?

6         JAMESON JOHNSON:  I apologize, sir.  I'm actually not

7    used to addressing the Court.

8         In any case, in every conversation that I have with

9    my initial conversations with a client, I always introduce

10   myself as the paralegal for whichever attorney I'm working

11   for; you know, I work for John McBee, Ms. Posada, Michael

12   Kimerer, lots of people; but I always let them know that I am

13   a paralegal.  What they tell me I cannot be compelled to

14   share.

15        I also let people know that a lot of times attorneys

16   hire me because of their schedules I have more availability.

17   So I'm better able to be their point of contact rather than

18   them waiting for phone messages to be returned.

19        THE COURT:  Is your hourly rate, as far as you know,

20   less than Ms. Bertrand's for this appointment?

21        JAMESON JOHNSON:  Substantially, less.

22        THE COURT:  Okay.  And do you have a recollection

23   whether you ever represented to Mr. Morley that you were a

24   paralegal working on this case for Ms. Bertrand?

25        JAMESON JOHNSON:  I did in the very first

1    conversation that I had with Mr. Morley.

2           THE COURT:  Okay.  Did you ever represent to him that

3    you were a lawyer?

4           JAMESON JOHNSON:  Never.

5           THE COURT:  Okay.  And that's because it's not true?

6           JAMESON JOHNSON:  Correct.

7           THE COURT:  Okay.  All right.  Thank you.  You may be

8    seated, Mr. Johnson.

9           Now, Mr. Morley, I don't know if this issue is more

10   than just your assumption that he was a lawyer and then you

11   found out he wasn't and then what effect that might have on

12   your case.

13          Is there a broader issue here that needs to be

14   addressed?

15          CARLOS ADRIAN MORLEY:  Well, you see, Your Honor, if

16   there is some sort of problem that I would have with this

17   particular gentlemen now knowing that he is a paralegal, there

18   is no rule book that says what I can read to find out.  Under

19   Rule 42 it governs conduct of attorneys.

20          I don't see any rules in there under Rule 42 that

21   governs conduct of a paralegal or someone who acts as an

22   assistant.  That's one thing.

23          And the other thing is I have never had a

24   conversation with this gentlemen where he was anything less --

25   you couldn't describe it as anything but absolutely, almost

1   the rudest that I have ever had of any conversation.  It's the

2   utmost disrespect I have ever had with an individual.

3          And one of the things that I have had trouble with is

4   I asked him originally because it took so long for Joy

5   Bertrand to contact me to tell me she was my attorney, I never

6   even found out from her.  I had to find out from Mr. Jameson.

7          And so I assumed at that moment that he was a partner

8   in the law firm, because she never called me.  I made several

9   attempts to try to get ahold of her, and she would never --

10  and I have all of these e-mails that I have as evidence to

11  show where I tried to contact her.  And there's no -- there is

12  no reply to the e-mails.

13         And to answer your question further, Mr. Jameson and

14  I, we had -- every single time we've had a conversation, he's

15  instructing me about the law.  And one of the first

16  conversations I had with him on the phone was that I said,

17  well, the bottom line is there has been so many days lapse

18  since the appointment of Ms. Bertrand -- and also if you

19  notice that there were nine different issues that were brought

20  to the habeas corpus petition and there are only -- the Court

21  is only addressing one of them -- so I asked Mr. Jameson,

22  because I thought he was an attorney at the time, I spoke to

23  him on the phone and I said, Well, is it possible then that we

24  should file a motion for leave to amend because I failed to

25  file specific arguments in a lawyerly manner or a person who

1    has lawyerly skills and do I need to do that?

2           And he said, Well, what sort of motion do you need to

3    file?  And I said, Well, for one thing, I'm under probation

4    right now.  The probation began in 2004.  And so I'm having to

5    pay $150 a month in probation and I would like to file a

6    motion for leave to -- or not a leave to amend, a motion to

7    perhaps release pending appeal, in other words, release me

8    from the probation pending the outcome of this particular

9    issue.

10          THE COURT:  Okay.  Mr. Morley, are you telling me

11   that you are on probation with the State of Arizona?

12          CARLOS ADRIAN MORLEY:  Yes, with Maricopa County

13   Sheriff's Department.

14          THE COURT:  Well, you're on probation with probably

15   the Maricopa County Superior Court.

16          CARLOS ADRIAN MORLEY:  Right.

17          THE COURT:  Not with the Sheriff's Department.  Okay?

18          CARLOS ADRIAN MORLEY:  Okay.

19          THE COURT:  And is that as a result of the conviction

20   for which you have sought the habeas corpus action here in

21   federal court?

22          CARLOS ADRIAN MORLEY:  Yes.

23          THE COURT:  Okay.  All right.  And you're not

24   expecting either Ms. Bertrand or Mr. Johnson to help you get

25   you off probation, are you?

1        CARLOS ADRIAN MORLEY:  Well, the way I read the

2   federal rules here --

3        THE COURT:  Let me cut to the chase here.  They don't

4   do that for you.

5        CARLOS ADRIAN MORLEY:  Okay.  Well --

6        THE COURT:  Okay?

7        CARLOS ADRIAN MORLEY:  Well, perhaps you could answer

8   this.  I have a question, because under 28-2254 it says in

9   there that I'm no longer under the jurisdiction of Maricopa

10  County, I'm under the jurisdiction of the federal government

11  while the case is pending.

12        THE COURT:  Well, that's not true.  That's not true.

13        CARLOS ADRIAN MORLEY:  Okay.  I did not know that.

14        THE COURT:  That's not true.  If you violate your

15  probation, I can assure you, sir, that you will be picked up

16  and incarcerated depending upon the nature of your violation.

17  Okay?

18        I need to be kind of blunt here, Mr. Morley.

19        CARLOS ADRIAN MORLEY:  Yes.

20        THE COURT:  Your problem with Mr. Johnson has nothing

21  to do with his being African-American, does it?

22        CARLOS ADRIAN MORLEY:  No.  I have never been that

23  way.

24        THE COURT:  Okay.

25        CARLOS ADRIAN MORLEY:  I have risked my life for

1    African-American people that I didn't even know.

2              THE COURT:  Okay.  I just want to get that out of the

3    courtroom.

4              CARLOS ADRIAN MORLEY:  I don't even see the color of

5    the skin whenever I make a decision to protect someone with my

6    own life and I have done this before.

7              THE COURT:  Okay.  Now, Mr. Morley, very quick

8    conclusion that I'm coming to, that you perceived to me to be

9    a difficult client because you want to run the show.  And

10   maybe you think you -- that you would be better off

11   representing yourself, Mr. Morley, than having a lawyer

12   represent you, because the lawyer is going to be the

13   quarterback of your team.

14             She's going to make the decisions.  She's not going

15   to file a frivolous motion or do something that would cross

16   the bounds of lawyer ethics and jeopardize her license to

17   practice law.

18             And you have to understand that, that she's running

19   the show.  And if that's not acceptable to you, then any other

20   lawyer would tell you the same thing.  So you need to decide,

21   I think, whether you want a lawyer to represent you or not.

22             CARLOS ADRIAN MORLEY:  I do want a lawyer.  I do need

23   one.  I can't make an oral argument in front of the U.S.

24   District Court.  I don't have the skills.

25             THE COURT:  Okay.

1          CARLOS ADRIAN MORLEY:  And I don't have the training.

2          THE COURT:  All right.  Do you have any criticism of

3     the way Ms. Bertrand has handled your case so far except she

4     didn't get in contact with you fast enough or to your e-mails?

5          CARLOS ADRIAN MORLEY:  Well, the other thing that I

6     have is there's only 15 days that you have according to the --

7     according to the rules that they have in the U.S. District

8     Court and the other nine -- the other eight issues of the nine

9     issues that I brought, I thought perhaps they should have

10    perhaps filed some sort of motion for reconsideration or a

11    motion for leave to amend, because I wanted to know if we

12    totally relinquished all of those arguments forever if -- you

13    know, because one of them is capacity.

14          And I believe that I was able to establish the fact

15    that I did not have the mental capacity to enter any plea that

16    day and I think I carried that through every single lower

17    court.

18          THE COURT:  Well, I don't think that Ms. Bertrand is

19    going to make an argument in federal court that was not

20    previously made in state courts, because such a claim would

21    be -- would not be exhausted.  Okay?  You can't raise new

22    issues here that were not raised first in state court.

23          So my question is how did you present that to

24    Ms. Bertrand?  Did you tell her what you wanted done?

25          CARLOS ADRIAN MORLEY:  I never spoke to her.  I had

1   to speak to Jameson Johnson.  The only time I got to speak to

2   Ms. Bertrand was in the coffee shop and she gave me this

3   document.

4            And this document she didn't even hand it to me.  She

5   said, Don't call me.  Make sure you contact him only.  And

6   this is the document that he wrote in his handwriting and this

7   is all I have --

8            THE COURT:  What is it?

9            CARLOS ADRIAN MORLEY:  -- that proves that Jameson --

10  that Ms. Bertrand is my lawyer.

11           THE COURT:  What is it that you're showing me?

12           CARLOS ADRIAN MORLEY:  It is a -- it's just a -- it's

13  a piece of paper written from looseleaf paper and it says:

14  Joy Bertrand, Esquire, Box 2734, Scottsdale, Arizona, and

15  doesn't even have a phone number that I can even call her.

16           So I don't have the privilege anymore to call her or

17  e-mail.  There is no e-mail address.  So I guess that's all

18  been taken away.

19           THE COURT:  Mr. Morley, did I not appoint

20  Ms. Bertrand to represent you?  Is not my court order

21  sufficient proof, sir, that she's your lawyer?

22           CARLOS ADRIAN MORLEY:  She did allude to the fact she

23  hadn't done any work as far as habeas corpus in U.S. District

24  Court.

25           THE COURT:  Well, that's not true, because I know she

1    has in other cases.  You're not being responsive to my

2    question.

3          Sit down, please, Mr. Morley.  I want to hear from

4    Ms. Bertrand, please.

5          Ms. Bertrand, I don't know how many hours

6    collectively you and Mr. Johnson have put in this case.  Have

7    I hit the nail on the head or have I missed it that Mr. Morley

8    is a difficult, challenging client?

9          MS. BERTRAND:  Your Honor, I have a difficult job

10   generally.  I hesitate simply because I want to give

11   Mr. Morley the best chance at success down the road in this

12   case, whether I continue as the lawyer or not.

13         There have been communication issues with Mr. Morley

14   that I addressed in general terms in my response to his

15   motion.

16         THE COURT:  Tell me here in open court.  What are

17   your problems that you have had with Mr. Morley, either in

18   communications or in dealing with him?

19         MS. BERTRAND:  For some period he did not have of a

20   working phone number.  That limited our contact with him.

21   There's --

22         THE COURT:  Has that been remedied?

23         MS. BERTRAND:  To the best of my knowledge, yes.  I

24   have hesitated to have contact with Mr. Morley after receiving

25   an e-mail from him saying "go away."

```
 1            THE COURT:  Okay.
 2            MS. BERTRAND:  So that's why the Court set this
 3    hearing and I figured it would be better to wait for the
 4    Court's intervention.
 5            THE COURT:  Okay.
 6            MS. BERTRAND:  Mr. Morley -- I think is still
 7    struggling with some capacity issues.  To the extent that
 8    after he filed this pleading regarding this and, you know,
 9    Judge, I don't take clients wanting a different lawyer
10    personally.  I have been doing this too long.
11            But there were issues set forth in the motion that
12    were just not consistent with what the facts were or were
13    twisting things.  At that point I contacted the capital habeas
14    unit at the Federal Defender's Office to discuss with the
15    lawyers that deal with this kind of issue a lot whether or not
16    I had a basis to have Mr. Morley reviewed for competency.
17            I have seen my difficulties with Mr. Morley more
18    towards clinical issue than a personality issue.
19            THE COURT:  Okay.
20            MS. BERTRAND:  The conclusion was, by the way, from
21    capital habeas, that you only have that right at the habeas
22    proceeding level in a capital matter.  I think.
23            THE COURT:  Do you know what a capital matter is?
24            CARLOS ADRIAN MORLEY:  Yes.
25            THE COURT:  Mr. Morley?
```

```
 1              CARLOS ADRIAN MORLEY:  Yes.  I believe it's one where
 2    someone has actually been murdered.
 3              THE COURT:  No.  In a death penalty case.
 4              CARLOS ADRIAN MORLEY:  Okay.
 5              THE COURT:  Okay.  Go ahead, Ms. Bertrand.
 6              MS. BERTRAND:  We discussed the leading case.  I
 7    believe it's Rohan (ph) regarding the availability of those
 8    types of services.
 9              Regarding the allegation of rudeness, I think this
10    goes to these issues.  Mr. Morley sees a confrontation of fact
11    as rudeness, where I would say it's more saying, Well, that's
12    not what the record says or here's why you don't want to take
13    that step.  Here is why this would be a better choice.
14              And, in fact, the discussion -- in terms of the
15    meeting at Starbucks which we arranged for his convenience,
16    Mr. Johnson gave him a ride home.  It was hot that day and he
17    didn't want Mr. Morley to go back in the heat.
18              Mr. Johnson is direct with people, but I don't
19    believe he's rude.  And when we received -- when my office
20    received a phone call at ten o'clock at night on a Friday, I
21    believe Mr. Johnson was direct with Mr. Morley about don't
22    call this number unless it's an emergency.  We keep this
23    number open for emergencies.  And that was followed up with
24    the e-mail that's discussed.
25              But I don't interpret those types of statements
```

1  setting boundaries in explaining why there's a better way of

2  doing things or a better way to get to the goal as being rude

3  or inappropriate with a client.

4       THE COURT:  Ms. Bertrand, could you estimate for me

5  how much time you have spent on this case in terms of hours?

6       MS. BERTRAND:  Just an estimate, Your Honor, I would

7  estimate I have spent 15 to 20 hours.  The record was

8  extensive.  I had to do outside research regarding his health

9  issues, consulting with Mr. Johnson, et cetera.

10      We have kind of, with Mr. Morley telling me to go

11  away, it's kind of put the case on hold.  I would like to

12  proceed.  And, quite frankly, I think he has a winnable claim

13  and I told him that.  I think he has a great claim, but he

14  doesn't want me to investigate it and that's where the tension

15  started.

16      THE COURT:  Okay.  Again, let me kind of cut to the

17  chase here.  Do you believe that your relationship with

18  Mr. Morley has deteriorated to the level that you would prefer

19  not to represent him anymore?

20      MS. BERTRAND:  I don't believe Mr. Morley would

21  communicate with me effectively.

22      THE COURT:  Okay.  That's not answering my question.

23      I want to know if you feel that in light of what he's

24  said and done and written about you, about Mr. Johnson,

25  whether that's something you can lay aside and you can

continue to represent him with your full energies and passion

that you have that I have seen before in representing criminal

defendants, which is usually where we have our contact; or

whether you think your relationship has deteriorated in light

of all that's happened to the point that you would prefer not

to represent him?

Because, you know, I'm going to make it clear here.

I'm not going to keep you two married together if you are not

happy with each other, because I don't want Mr. Morley to say

he lost his habeas petition because his lawyer didn't do A, B,

C, or D, and then we have other issues.

MS. BERTRAND:  That was going to be my concern, Your

Honor.  My willingness to do a good job for Mr. Morley, like

it is to do for any client, is one thing.

My concern is the record at this point.  And I don't

want there to be a misperception down the road that I did

anything to harm Mr. Morley's case.

THE COURT:  Okay.  So I'm still waiting for you to

answer my question whether you feel that you could plow ahead

and represent him and let bygones be bygones or -- and I'm

going to kind of get into the same line of questioning with

him as well; or whether you think that there has just been too

much damage and he needs to start afresh with somebody

different?

MS. BERTRAND:  Judge, I would be more comfortable

1    seeing another lawyer step in.

2           THE COURT:  All right.  Mr. Morley --

3           CARLOS ADRIAN MORLEY:  Yes, Your Honor?

4           THE COURT:  I'm a little disappointed to have seen

5    your relationship deteriorate with a fine lawyer.

6           CARLOS ADRIAN MORLEY:  Yes, Your Honor.

7           THE COURT:  Who you just heard say here in open court

8    that she thinks you have a winnable case.  I don't know.  I

9    haven't got into your case deep enough to know whether you do

10   or don't.  Most habeas petitions are denied.

11          CARLOS ADRIAN MORLEY:  Yes.

12          THE COURT:  But some are granted.  And I can't tell

13   you now.  It's premature.  Reluctantly, I'm going to give you

14   a new lawyer.

15          CARLOS ADRIAN MORLEY:  Thank you.

16          THE COURT:  I'm not finding that either Ms. Bertrand

17   or Mr. Johnson did anything inappropriate in representing you

18   or your interests.  I can assure you, Mr. Morley, that there

19   will not be a third lawyer.

20          CARLOS ADRIAN MORLEY:  Yes, Your Honor.

21          THE COURT:  And if you get on the wrong side of your

22   next lawyer and he or she says, "I want off of this case

23   because I can't deal with him.  He's impossible.  He wants me

24   to do that.  I told him you can't.  He wants me to do this.  I

25   said that's unethical.  He wants me to do that.  You can't do

UNITED STATES DISTRICT COURT

```
1    that.  It's not exhausted."  You need to follow your lawyer's
2    advice.
3         CARLOS ADRIAN MORLEY:  Yes, Your Honor.
4         THE COURT:  There won't be a third lawyer.
5         CARLOS ADRIAN MORLEY:  Thank you.
6         THE COURT:  You will be representing yourself.  Do
7    you understand that?
8         CARLOS ADRIAN MORLEY:  Yes, Your Honor.
9         THE COURT:  All right.  I'm going to grant the motion
10   and I'll enter an order in the near future.
11        Ms. Bertrand, I would appreciate your cooperation and
12   assistance in providing everything you have in your file
13   regarding Mr. Morley and what research and so forth to the
14   next lawyer when he or she contacts you.
15        MS. BERTRAND:  I would be happy to do that.
16        THE COURT:  All right.  Thank you.  We are adjourned.
17        CARLOS ADRIAN MORLEY:  Thank you, Your Honor.
18        THE COURT:  You're welcome.
19        CARLOS ADRIAN MORLEY:  Thank you very much.
20      (Proceedings adjourned at  4:07 p.m.)
21                              *  *  *
22
23
24
25
```

1                    C E R T I F I C A T E

2

3        I, ELIZABETH A. LEMKE, court-approved transcriber,

4   certify that the foregoing is a correct transcript from the

5   official electronic sound recording of the proceedings in the

6   above-entitled matter.

7

8        DATED at Phoenix, Arizona, this 19th day of January,

9   2011.

10

11

12

13                        s/Elizabeth A. Lemke
                          ELIZABETH A. LEMKE
14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

# EXHIBIT C

1
THOMAS C. HORNE
ATTORNEY GENERAL
(FIRM STATE BAR No. 14000)

2

3
ADRIANA M. ROSENBLUM
ASSISTANT ATTORNEY GENERAL
CRIMINAL APPEALS/

4
CAPITAL LITIGATION SECTION
1275 W. WASHINGTON

5
PHOENIX, ARIZONA 85007-2997
TELEPHONE: (602) 542-4686
(STATE BAR NUMBER 025724)

6
E-MAIL: CADocket@azag.gov

7
ATTORNEYS FOR RESPONDENTS

8
# UNITED STATES DISTRICT COURT

9
## DISTRICT OF ARIZONA

10

11
Carlos Adrian Morley,

      Petitioner,

12

13
  -vs-

14
Yolanda Elliot, et. al.,

      Respondents.

15

CIV 09–1554–PHX–NVW (LOA)

RESPONDENTS' BRIEFING IN ACCORDANCE WITH THE COURT'S ORDER OF JULY 7, 2010

16
      Respondents submit its briefing pursuant to this Court's order of July 7, 2010.

17
Upon review of the record and controlling legal authority, Respondents agree that

18
Petitioner was denied the effective assistance of counsel in CR2003-021342

19
because: (1) defense counsel advised Petitioner to enter into a plea agreement

20
contemplating an historical prior felony conviction that did not exist, and (2) as a

21
result, Petitioner suffered prejudice when he was subjected to an enhanced

22
sentencing range.

23
    .   .   .

24
    .   .   .

25

26

27

28

1

I. FACTUAL AND PROCEDURAL BACKGROUND.[1]

On July 7, 2010, this Court issued an Order finding that an evidentiary hearing was warranted on Petitioner's Ground I claim that counsel in CR2003-021342 was ineffective because she advised and permitted him to enter into a plea agreement that included an admission to an historical prior conviction and exposed him to an enhanced sentence under A.R.S. § 13-604 when Petitioner did not have a prior conviction.  (Docket 38, at 1.)  Specifically, this Court found that "the performance of defense counsel in CR2003-021342 was likely deficient for advising Petitioner to accept a plea agreement which permitted the court to consider Petitioner's conviction in CR2002-014160 as a prior conviction for sentence enhancement purposes under A.R.S. § 13-604. (*Id.* at 20.)  This Court, however, declined to resolve the issue because the record and briefing was insufficient.  (*Id.* at 25.)  This Court likewise found the briefing and record on *Strickland's* prejudice prong deficient.  (*Id.*)  As a result, this Court scheduled an evidentiary hearing in the interest of creating a complete record.  (*Id.* at 26.)  This Court further ordered simultaneous briefing addressing the issue of whether Shelley Davis was ineffective.  (*Id.* at 27.)

Shortly thereafter, on July 15, 2010, Respondents asked this Court to reconsider its order because Petitioner's plea in CR2002-014160 validly served as an historical prior conviction in his CR2003-021342 plea agreement, and defense counsel was thus not ineffective.  (Docket 40.)  This Court denied Respondent's motion noting that its "findings" were not final and the parties could address the prior conviction issue during the evidentiary hearing and in their briefing.  (Docket 42.)

---

[1] Because Respondents thoroughly recited the factual and procedural background in our answer, we will set forth only the relevant facts that have arisen since the answer was filed in February 2010. (*See* Docket 21.)

1  On December 21, 2010, Respondents filed a motion to dismiss Grounds I
2  and II of Petitioner's habeas petition for lack of jurisdiction arguing his claims
3  related to CR2003-021342 are moot because they challenge his sentence which
4  Petitioner has served in its entirety. (Docket 66.) While briefing has been
5  completed, this motion is still at issue.

6  **II. ARGUMENT.**

7  Petitioner was denied the effective assistance of counsel in CR2003-021342
8  because: (1) defense counsel advised Petitioner to enter into a plea agreement
9  contemplating an historical prior felony conviction that did not exist, and (2) as a
10 result, Petitioner suffered prejudice when he was subjected to an enhanced
11 sentencing range.[2]

12 **A. Standard of Review.**

13 This Court may grant a writ of habeas corpus "only on the basis of some
14 transgression of federal law binding on state courts." *Middleton v. Cupp*, 768 F.2d
15 1083, 1085 (9th Cir. 1985); *see also Engle v. Isaac*, 456 U.S. 107, 119 (1982). The
16 writ of habeas corpus is intended to guard against "extreme malfunctions" in the
17 judicial system, *Brecht v. Abrahamson*, 507 U.S. 619, 634 (1990) (internal
18 quotation marks omitted), and is available only to those "whom society has
19 grievously wronged." *Calderon v. Coleman*, 525 U.S. 141, 146 (1998) (per
20 curiam) (internal quotation marks omitted). In fact, Congress' very purpose in

21

22

[2] In conceding Petitioner did not receive the effective assistance of counsel
23 guaranteed under the Sixth Amendment, Respondents do no waive their mootness
argument set forth in their pending motion to dismiss for lack of jurisdiction.
24 Despite deficient performance, and the resulting prejudice, this Court should
dismiss Petitioner's claims because he has served his sentence in its entirety and
25 can receive no further redress. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)
("[T]hroughout the litigation, the plaintiff must have suffered, or be threatened
26 with, an actual injury traceable to the defendant and likely to be redressed by a
favorable judicial decision."); *U.S. v. Palomba*, 182 F.3d 1121, 1123 (9th Cir.
27 1999) (finding a challenge to a petitioner's sentence becomes moot once the
sentence is completed).
28

3

enacting the Anti-terrorism and Effective Death Penalty Act (AEDPA) was "to restrict the availability of habeas corpus relief." *Greenawalt v. Stewart*, 105 F.3d 1268, 1275 (9th Cir. 1997).

In keeping with Congress' intent, AEDPA limits the availability of habeas relief for a claim adjudicated on its merits to circumstances where the state court's disposition either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established federal law when the court has applied a rule of law that contradicts the governing law set forth in Supreme Court precedent, or has encountered a set of facts that are "materially indistinguishable" from a Supreme Court decision and yet reached a different result than the Supreme Court. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). Similarly, under 28 U.S.C. § 2254(d)'s "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). The state court's application of Supreme Court precedent must be "objectively reasonable," which requires the decision to be more than incorrect or erroneous. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002) (finding unreasonable application distinct from incorrect one). Additionally, as discussed above, this Court presumes that a state court's factual determination is correct, and a petitioner bears the burden of rebutting this

1   presumption by clear and convincing evidence.   *See* 28 U.S.C. § 2254(e)(1);

2   *Purkett v. Elem*, 514 U.S. 765, 769 (1995) (per curiam); *Williams v. Rhoades*, 354

3   F.3d 1101, 1106 (9th Cir. 2004).

4   **B. The Two-Part *Strickland* Test.**

5   The Supreme Court has set forth the clearly established federal law

6   governing ineffective assistance of counsel claims in *Strickland v. Washington*, 466

7   U.S. 668 (1984).  To merit relief, a petitioner must show that "counsel's conduct so

8   undermined the proper functioning of the adversarial process that the trial cannot

9   be relied on as having produced a just result."  *Strickland*, 466 U.S. at 686.  The

10  petitioner must satisfy each prong of the two-part *Strickland* test by demonstrating

11  that: (1) counsel's performance was deficient under prevailing professional

12  standards, and (2) he suffered prejudiced as a result.  *Id.* at 687–88.

13  **i. Deficient Performance.**

14  A petitioner demonstrates deficient performance by showing "that counsel's

15  representation fell below an objective standard of reasonableness."  *Id.*   A

16  petitioner's allegations and supporting evidence must withstand this Court's

17  "highly deferential" scrutiny of counsel's performance, and overcome its strong

18  presumption that counsel "rendered adequate assistance and made all significant

19  decision in the exercise of reasonable professional judgment."  *Id.* at 689–90.

20  Under this deferential standard, a petitioner bears the heavy burden of showing that

21  counsel's assistance was "neither reasonable nor the result of sound trial strategy."

22  *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001).  Actions by counsel that

23  "might be considered sound trial strategy" do not constitute ineffective assistance.

24  *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

25  In fact, this Court engages in an "extremely limited" examination of counsel's

26  performance:

27
28      The test has nothing to do with what the best lawyers would have
        done.  Nor is the test even what most good lawyers would have done.

> [This Court] ask[s] only whether some reasonable lawyer at the trial
> could have acted, in the circumstances, as defense counsel acted at
> trial.

*Coleman v. Calderon*, 150 F.3d 1105, 1113 (9th Cir. 1998), *rev'd on other grounds*, 525 U.S. 141 (1998) (internal quotation marks omitted).

As *Coleman* suggests, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Boldin v. Calderon*, 59 F.3d 815, 833 (9th Cir. 1995) (quoting *Strickland*, 466 U.S. at 689). This Court "will neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight." *Campbell v. Wood*, 18 F.3d 662, 673 (9th Cir. 1994) (en banc).

### ii. Prejudice.

Even when a petitioner establishes that counsel has performed deficiently, he must still show prejudice to be entitled to relief. *Strickland*, 466 U.S. at 687–96. This Court will not presume prejudice. *Jackson v. Calderon*, 211 F.3d 1148, 1155 (9th Cir. 2000). Rather, a petitioner must affirmatively prove actual prejudice–the mere possibility that he suffered prejudice is insufficient to establish *Strickland*'s prejudice prong. *See Cooper v. Calderon*, 255 F.3d 1104, 1109 (9th Cir. 2001). To prove prejudice, a petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *see Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (noting prejudice prong concerned with whether "counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair . . . [u]nreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right"). A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Because Petitioner pled

guilty, he must establish "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Finally, in reviewing a state court's resolution of an ineffective assistance of counsel claim, this Court considers only whether the state court applied *Strickland* unreasonably:

> For [a petitioner] to succeed [on an ineffective assistance of counsel claim], . . . he must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively reasonable manner.

*Bell*, 535 U.S. at 698–99 (citation omitted); *see also Woodford v. Visciotti*, 537 U.S. 19, 24–25 (2002) ("Under § 2254(d)'s 'unreasonable application' clause, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied *Strickland* incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner.") (citations omitted).

## C. Analysis.

In applying the *Strickland* standard to Petitioner's case, it is clear that he did not receive the effective assistance of counsel. Consequently, Petitioner's plea agreements should be vacated and his original charges reinstated.

### i. Defense counsel's performance was deficient for advising Petitioner to accept a plea agreement which considered a prior felony conviction that did not exist.

The performance of defense counsel in CR2003-021342 was deficient for advising Petitioner to accept a plea agreement which permitted the state court to

1  consider Petitioner's conviction in CR2002-014160 as a prior conviction for
2  sentence enhancement purposes under A.R.S. § 13-604. In advising her client to
3  accept the plea agreement, defense counsel ignored the controlling Arizona
4  precedent governing the use of contemporaneous convictions for sentence
5  enhancement.

6       For instance, the Arizona Supreme Court addressed the "historical prior
7  felony conviction" requirement for sentence enhancement under A.R.S. § 13-604
8  in *State v. Thompson*, 200 Ariz. 439, 27 P.3d 796 (2001). In *Thompson*, the
9  appellant pled guilty to two drug offenses in May 1998. *Id.* at 440, ¶ 2, 27 P.3d at
10 797. Before sentencing, however, he absconded but was taken into custody shortly
11 thereafter and charged with theft. *Id.* A jury found the appellant guilty of the theft
12 charge in December 1998. *Id.* The appellant was then sentenced on all three
13 convictions at a consolidated sentencing hearing the next month. *Id.* At that
14 hearing, the state alleged that the drug offenses were historical prior felony
15 convictions under A.R.S. § 13-604, and that the appellant should be sentenced
16 under the enhanced sentencing range set forth in that statute instead of the more
17 lenient sentencing range delineated in A.R.S. § 13-702.02. *Id.* at ¶ 3. The trial
18 court agreed and, applying A.R.S. § 13-604, sentenced the appellant to 3 years in
19 prison. *Id.* The Arizona Supreme Court granted review "to determine which
20 sentence enhancement statute applies when the defendant commits prior felonies
21 before the offense for which he is being sentenced, yet is convicted of the prior
22 felonies after commission, but before conviction, of the present offense." *Id.* at ¶
23 5.

24      Upon review of the plain language of A.R.S. § 13-604, the Arizona Supreme
25 Court construed the term "historical prior felony conviction" to mean "the
26 *conviction* on the prior offense must precede the *conviction* on the present offense."
27 *Id.* at 441, ¶ 6, 27 P.3d at 798 (emphasis added). The Arizona Supreme Court
28 further explained that "[o]ne is convicted when there has been a determination of

8

1  guilt by verdict, finding, or the acceptance of a plea." *Id.* at ¶ 7 (citing *State v.*
2  *Walden*, 183 Ariz. 595, 615, 905 P.2d 974, 994 (1995)).   Enhancement under
3  A.R.S. §13-604 is then unavailable when felonies are tried together.   *Id.* at ¶ 9.
4  Instead, when "offenses are consolidated for trial, the conviction on the prior
5  offense cannot precede the conviction for the subsequent offense.   Thus, when
6  felonies are tried together, any enhancement must be pursuant to A.R.S. § 13-
7  702.02."   *Id.*   Because the appellant in *Thompson* was convicted of the drug
8  offenses by plea in May 1998, then convicted of the theft offense by verdict in
9  December 1998, his sentence was properly enhanced under A.R.S. § 13-604. *Id.* at
10  ¶ 7.

11      Three years later, just prior to Petitioner's sentencing in this matter, the
12  Arizona Court of Appeals interpreted *Thompson* in *State v. Ofstedahl*, 208 Ariz.
13  406, 93 P.2d 1122 (App. 2004).   In *Ofstedahl*, the charges against the appellant
14  arose from four separate incidences in which she was arrested for DUI.   *Id.* at 407,
15  ¶ 2, 93 P.2d at 1123.   The appellant and the state agreed to resolve the four criminal
16  prosecutions in a single plea agreement where the appellant would plead guilty to
17  all of the charged offenses.   *Id.*   The agreement provided that, pursuant to § 13-604,
18  some of the DUI offenses would be used as historical prior felony convictions to
19  the other DUI offenses.   *Id.*   The appellant pled guilty and provided a factual basis
20  for all of the counts at one hearing, and the trial court accepted the pleas at the
21  same time.   *Id.*   At sentencing, the trial court enhanced four of the sentences using
22  the prior convictions as set forth in the plea agreement.   *Id.*   The appellant then
23  filed a petition for post-conviction relief arguing that, pursuant to *Thompson*, her
24  first two convictions could not serve as historical prior felony convictions to
25  enhance her sentences for the other convictions entered at the same time. *Id.* at ¶ 3.
26      In applying the standard set forth in *Thompson*, the Arizona Court of
27  Appeals noted that "[i]n this context, we can discern no meaningful distinction
28  between convictions based on jury verdicts rendered at a single trial for multiple

9

1    felonies and convictions resulting from the trial court's acceptance of guilty pleas
2    to multiple felonies at the *same hearing.*" *Id.* at ¶ 4 (emphasis added). Because the
3    trial court accepted the appellant's guilty pleas in all four cases at the same time,
4    none of the resulting convictions preceded any others and they could not be used as
5    historical prior felony convictions to enhance the sentences for the other
6    convictions encompassed by the same plea agreement. *Id.* Instead, the applicable
7    sentencing statute was A.R.S. § 13-702.02 which contemplates multiple
8    prosecutions that are resolved through a comprehensive plea agreement and all
9    pleas are entered at the same time. *Id.* at 408, ¶ 6, 93 P.3d at 1124.

10          Here, at a single change of plea hearing, Petitioner pled guilty in CR2002-
11    014160 and CR2003-021342. (Docket 21, Exhibit P.)  At that hearing, despite
12    addressing the charges and plea agreements in both cause numbers separately, the
13    trial court accepted both pleas on the same date, and at the same time.   (*Id.*)
14    Petitioner's conviction in CR2002-014160, therefore, could not precede his
15    conviction in CR2003-021342, and Petitioner did not have a prior historical felony
16    conviction as construed in *Thompson* and *Ofstedahl*, which could be used to
17    enhance his sentence under A.R.S. § 13-604.

18          Although it appears from the record that, as a term of the plea agreement in
19    CR2003-021342, the parties intended to use Petitioner's conviction in CR2002-
20    014160 as an historical prior felony conviction, it is of little consequence.  In order
21    to use the CR2002-014160 conviction as an historical prior felony conviction, the
22    change of plea hearing in that cause number had to be calendared for a date prior to
23    the change of plea hearing in CR2003-021342. The Arizona Court of Appeals has
24    noted the absurdity that is created under circumstances such as these:

25          We appreciate the trial court's observation that applying *Thompson* in
26          this context might "create absurdities": the court noted that sentencing
              under § 13-604 would have been permissible under [the appellant's]
27          reading of *Thompson* if it had merely calendered the change-of-plea
              hearings for each cause number on different dates.  But the same
28

anomaly arises in the jury trial context: convictions for distinct crimes rendered at separate trials can be used as historical prior convictions under § 13-604, but *Thompson* is clear that enhancement under § 13-604 is impermissible if the same felonies are tried together. *Thompson*, 200 Ariz. at 441, ¶ 9, 27 P.3d at 798. We have no authority to overrule the supreme court's decision in *Thompson*.

*Ofstedahl*, 208 Ariz. at 408, ¶ 8, 93 P.3d at 1124.

Similarly, this Court is bound by the precedent set forth in *Thompson* despite its absurd effect in Petitioner's case. Defense counsel's failure to be familiar with the controlling case law was unreasonable and cannot be construed as sound trial strategy. *See Tilcock v. Budge*, 538 F.3d 1138, 1146 (9th Cir. 2008) ("We can think of nothing strategic about failing to object at sentencing to categorically non-qualifying convictions that would prevent a defendant from being eligible for sentencing under a habitual criminal statute."). Defense counsel's performance was therefore deficient.

### ii. Petitioner was prejudiced by defense counsel's deficient performance because he was subjected to an enhanced sentencing range under A.R.S. § 13-604.

As a result of defense counsel's deficient performance, Petitioner was subjected to an enhanced sentencing range. In CR2003-021342, Petitioner pled guilty to solicitation to commit first degree murder as a class 3 felony with one historical prior felony conviction. (Docket 21, Exhibit O.) The plea agreement additionally provided that Petitioner shall be sentenced to a term of imprisonment not less than the statutory presumptive and not to exceed the statutory maximum. (*Id.*) Consequently, Petitioner was subjected to the sentencing range set forth in A.R.S. § 13-604(B) (1998), which contemplates a person who has been convicted of a class 3 felony and who has an historical prior felony conviction. The range provides for a presumptive term of 6.5 years' imprisonment and a maximum term of 13 years' imprisonment. A.R.S. § 13-604. At the sentencing hearing, the state

1  court found a slightly aggravated sentence was warranted, and sentenced Petitioner

2  to 7.5 years' imprisonment.  (Docket 21, Exhibit S.)

3       Because Petitioner did not have an historical prior felony conviction, he

4  should have been sentenced pursuant A.R.S. § 13-702.02 (1999).  A.R.S. § 13-

5  702.02 is appropriate for a "person who is convicted of two or more felony

6  offenses that were not committed on the same occasion but that either are

7  consolidated for trial purposes or are not historical prior felony convictions as

8  defined in section 13-604."  The sentencing range for a class 3, second

9  nondangerous felony offense provides for a presumptive term of 3.5 years'

10  imprisonment and a maximum term of 7 years' imprisonment. A.R.S. § 13-702.02

11  (B)(3).  Petitioner's 7.5 year sentence then exceeded the correct statutory

12  maximum by 6 months.  Presumably, the sentencing discrepancy exceeds the 6

13  months served in excess of the sanctioned sentencing range.  If the state court,

14  knowing the correct sentencing range, still sought to sentence Petitioner to a

15  slightly aggravated term, it could be argued that he served a term of imprisonment

16  several years beyond that which would have been ordered.

17       In *Glover v. United States*, 531 U.S. 198 (2001), the Supreme Court

18  contemplated a similar instance in which, assuming defense counsel's performance

19  fell below a  reasonable standard, the defendant served a 6 to 21 month increased

20  sentence.   The Supreme Court was then tasked with the duty of determining

21  whether the 6 to 21 month increase constituted prejudice for purposes of

22  *Strickland*.  *Id.* at 199–204.  Below, the Seventh Circuit Court of Appeals had

23  found that an increase of 6 to 21 months in a defendant's sentence was not

24  significant enough to amount to prejudice for purposes of *Strickland*.  *Id.* at 202.

25  The Supreme Court disagreed, however, and noted that the Court's jurisprudence

26  suggested "that any amount of actual jail time has Sixth Amendment significance."

27  *Id.* at 203.  And while refusing to rule on the ultimate merits of the defendant's

28

1   claim, the Supreme Court agreed that "if an increased prison term did flow from an

2   error[,] the petitioner has established *Strickland* prejudice." *Id.* at 204–05.

3        The Ninth Circuit Court of Appeals recently applied *Glover* and, in doing so,

4   found that if a defendant could show a "reasonable probability" that "absent his

5   counsel's ineffective performance he would have obtained a verdict leading to less

6   time in prison, then, applying *Strickland* and *Glover*, he has satisfied the prejudice

7   prong of the ineffective assistance of counsel test." *Moore v. Czerniak*, 574 F.3d

8   1092, 1131 (9th Cir. 2009) (Berzon, J., concurrence).  In Petitioner's case, he was

9   subjected to an enhanced sentencing range in which he at least served 6 months in

10   excess of the correct statutory maximum.  Moreover, if the state court had found

11   that a presumptive sentence was appropriate, Petitioner has served as much as 48

12   months in excess of the maximum.  Under *Glover* and *Moore*, the 6 to 48 month

13   increase of Petitioner's sentence constitutes *Strickland* prejudice.

14           **iii.  This Court should vacate the plea agreements in CR2002-**

15   **014160 and CR2003-021342 and reinstate the original charges.**

16        In light of the conceded error in this case, this Court should vacate the plea

17   agreements in CR2002-014160 and CR2003-021342 and reinstate the original

18   charges.  *See United States v. Barron*, 172 F.3d 1153, 1164–65 ("Generally, the

19   appropriate remedy in the situation in which a prisoner entered a defective plea

20   pursuant to a plea agreement is to set aside the plea and grant a new trial."); *United*

21   *States v. Barker*, 681 F.2d 589, 592–93 (9th Cir. 1982) (finding that the district

22   court could reinstate the prisoner's indictment after the petitioner successfully

23   attacked her plea on the ground that her plea was made in the absence of adequate

24   information); *see also United States v. Gerard*, 491 F.2d 1300, 1306 (9th Cir. 1974)

25   ("If, for example, a defendant pleaded guilty to one count and the prosecutor

26   dismissed the others, it should be reasonably apparent that the dismissal was in

27   consideration of the plea; if the defendant succeeded in withdrawing the plea, he

28

13

1  should not be able to object to the prosecutor's reviving the other counts.").

2  Because the State obviously contemplated Petitioner's CR2003-021342 plea in

3  preparing the CR2002-014160 plea agreement, both plea agreements should be

4  vacated as a result of defense counsel's deficiency in CR2003-021342.

5       Petitioner then is cautioned that he may face trial and the possibility of

6  considerably more prison time if his pleas are vacated.   In CR2002-014160,

7  Petitioner faced two counts of fraudulent schemes and artifices, class 2 felonies;

8  three counts of theft, class 2 felonies; and two counts of trafficking in stolen

9  proper, class 3 felonies.  (Docket 21, Exhibit C.)  In CR2003-021342, Petitioner

10  was charged with a single count of conspiracy to commit first degree murder as a

11  class 1 felony.  (Docket 21, Exhibit F.)  Should the State choose to proceed on all

12  eight counts as charged, Petitioner could be sentenced to a considerable term of

13  imprisonment in addition to that already served. *See Alabama v. Smith*, 490 U.S.

14  794, 795–803 (1989) (finding that, absent vindictive purposes, a trial court may

15  impose a greater sentence after trial than that previously imposed after a guilty plea

16  which the defendant succeeded in having vacated).

17  III. CONCLUSION.

18       Petitioner did not receive the effective assistance of counsel guaranteed

19  under the Sixth Amendment.   This Court should vacate Petitioner's plea

20  agreements in CR2002-014160 and CR2003-021342 and reinstate the original

21  charges brought against him.  Because we concede deficient performance and

22  resulting prejudice, Respondents request this Court vacate the evidentiary hearing

23  scheduled for January 21, 2011.

24        .        .        .

25        .        .        .

26

27

28

DATED this 11th day of January 2011.

RESPECTFULLY SUBMITTED,

THOMAS C. HORNE
ATTORNEY GENERAL

/s/
ADRIANA M. ROSENBLUM
ASSISTANT ATTORNEY GENERAL
ATTORNEYS FOR RESPONDENTS

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of January, 2011, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

David S Eisenberg
David Eisenberg PC
331 N 1st Ave
Ste 108
Phoenix, AZ 85003-4528

Attorney for Petitioner

s/
E. Leyva

1441257